HOKE, *Ex'or, &c.,* v. HOKE *et al.*

12  427|
40  800|
40  817|
12  427
43  298|

Decided March 30, 1878.

1878.
Special Term.

1. On the 28th day of August, 1857, Christopher Hoke made and published his last will and testament in writing, in due form. The fifth clause of said will is in these words, viz: "Item V. I will and bequeath unto my two sons, Christopher Hoke and Anderson R. Hoke, jointly, my mill-tract of land, estimated to contain about four hundred acres, be the same more or less; the John Peters tract, estimated to contain two hundred and forty acres, be the same more or less, lying and being partly in Monroe and partly in Greenbrier counties, and adjoins the above named mill-tract, James M. Nickell and Wm. T. Mann; and my Beem tract of land, lying and being in the county of Greenbrier, adjoining the lands of Robert Morehead, Wm. T. Mann and others, and is said to contain eighty-four acres, be the same more or less, with all and singular the appurtenances belonging to the said tracts of land (mills, grist and saw, included) to them and their heirs forever. And I further direct, that the said Christopher Hoke and Anderson R. Hoke, pay to my son John M. Hoke, the sum of $1,000.00, to be paid in five annual equal installments; and that they also pay unto my son, Henry Hoke, the sum of $300.00, to be paid him in two annual equal installments.

The tenth clause of said will is in the following words, viz: "Item X. It is my will and desire, that after my death, all my property of every kind, not hereinbefore mentioned or disposed of, shall be sold by my executors, and the proceeds thereof, together with any debts or money on hand, applied to the payment of my debts; and the residue of said pro-

ceeds, if any after having been applied as above, be divided equally between my four sons, viz: Henry Hoke, Christopher Hoke, Anderson R. Hoke and John M. Hoke." (See the will in opinion of the Court.)

The devisee, Anderson R. Hoke, died before the testator, without having been married and leaving no issue. The testator died in May, 1863.

He lived and died in Monroe county, in Virginia, but now in the State of West Virginia.

The will was duly probated in said Monroe county. HELD: That the devise in said will to Anderson R. Hoke did not lapse; but the whole property, devised in and by said fifth clause of said will, passed at the death of the testator to the surviving devisee, Christopher Hoke, per force of the common law, notwithstanding the provisions of the 18th and 19th sections of chapter 116, of the Code of Virginia 1860, and also the provisions of the 13th and 14th sections chapter 122 of same Code, and notwithstanding said Henry Hoke and John M. Hoke survived the testator, and also sisters of said Anderson R. Hoke, deceased, and daughters of the testator survived the testator.

2. The said 13th section of chapter 122 modifies the common law so, that if a devise is made to two persons jointly, and one of the devisees or legatees dies before the testator, leaving issue who survive the testator, such issue of the pre-deceased devisee or legatee will take the estate, as that devisee or legatee would have done, if he had survived the testator, unless a different disposition thereof be made.

3. Although, when an executor sells personal estate of his testator, at an executorial sale, and takes bonds with security therefor, it is generally a conversion of the assets of the estate so sold, and he becomes liable as administrator to account for the amount of sales. and may be charged therewith, in settlement of his account, and the bonds become his individual property, still a court of equity may, where it is shown that the executor has acted in good faith and prudence, and has exercised due diligence in his efforts to collect the bonds, and has failed to do so for causes beyond his control, and a long time has elapsed. and it is doubtful whether the bonds can be made available or, if at all. within a reasonable time, relieve the executor in the settlement of his executorial account before the court from responsibility as to such debts, by crediting him in his account, with the amount thereof, and treating and controlling said debts, in whatever shape they may be, as unadministered assets of the testator, under the control and direction of the court.

4. The ordinary commission allowed an executor is five per cent on his receipts; but under peculiar circumstances he may be allowed more. He may be allowed for fees of counsel, when they appear to be reasonable, and it was proper to employ counsel, if he has paid such fees, and, if he has not paid them, the court may in its discretion, allow them to the counsel, and direct them to be paid to such attorneys.

1878.<br>
Special Term:<br>
Hoke, ex'or, &c.<br>
v.<br>
Hoke <i>et al.</i>

An appeal, granted upon the petition of Christopher Hoke, Jr., in his own right, and as executor of Christopher Hoke, Sr., to a decree of the circuit court of Greenbrier county, rendered on the 21st day of November, 1874, in a cause in chancery then in said court pending, wherein said Christopher Hoke, Jr., as such executor, and in his own right, was plaintiff, and John M. Hoke and others, heirs and devisees of Christopher Hoke, Sr., deceased, were defendants.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree complained of.

The facts sufficiently appear in the opinion of the Court.

*Samuel Price* and *J. W. Davis,* for appellants, referred to the following authorities:

1 Amb. 1367; 1 Roper on Legacies 121, 483; 19 Gratt. 787, 788; *Morley* v. *Bird,* 3 Ves. Jr. 628; *Cox* v. *Quantock,* 1 Ch. Cas. 238; *Shore* v. *Billingsby,* 1 Vern. 482; *Welster* v. *Welster,* 2 P. W. 387; 2 P. W. 529; Code Va. ch. 116; 2 Mat. Dig. 38; *Cheshire* v. *Purcell,* 11 Gratt. 774; *Baird* v. *Rowan,* 1 Mar. 217; *Hazlerig* v. *Hazlerig,* 3 Dana 48; Jarman on Wills, 295 (side); *Findley* v. *Findley,* 11 Gratt. 434; *Robinson* v. *Allen,* 11 Gratt. 788; 2 Danl. Ch. Pr. 1068, 1089, 1091, 1150; 3 Wend. 573; 1 John. Ch. 140; 2 Mar. 236; 1 Tuck. 2d book, 10 ch. p. 168.

*A. C. Snyder,* for appellees:

The appellant's first and principal assignment of error involves the proper construction of Item V, of the will of C. Hoke, deceased, which is in these words:

"I will and bequeath unto my two sons, Christopher Hoke and Anderson R. Hoke, jointly, my mill-tract of land, &c."

Anderson R. Hoke died unmarried, and without issue, in the life-time of the testator. Upon this presentation, the circuit court held that C. Hoke did not take the interest devised to Anderson. The views of the judge of that court will be found in the following abstract from his opinion in this cause which are here adopted as a part of this brief:

"Christopher Hoke, Sr., by this clause of his will, devised the land therein mentioned to his two sons, Christopher and Anderson R., jointly, without saying more, thereby making them joint-tenants *per formam doni.* But this joint-tenancy never became a vested estate, Anderson having died in the life-time of his father, and the question is, did Christopher take the whole? I am of the opinion that he did not, being led thereto by the following considerations:

"Survivorship was an incident of joint-tenancy at common law, and it followed as a consequence of survivorship that if one of the joint devisees died in the testator's life-time, the other took the whole. In time, however, this incident of joint-tenancy came into disfavor, so much so, that the courts were disposed to give effect to the slightest expressions against it, and it came to be said that survivorship had but one good quality, and that was its capability of being destroyed. It was in this spirit that our law-makers approached the subject, sweeping it away with the exception in case of executors and trustees, somewhat like the statute docking entails, directly and indirectly destroying it as an incident, whenever it presented itself in a practical shape;

impressing all land, no matter what the tenor, with the capability of being partitioned, of being devised; by the statute of descents, causing it to descend and pass in *parcenary* to the kindred, in the order named; making it liable to be mortgaged or otherwise incumbered or charged; making it subject to curtesy and to dower, to judgment liens, to attachment liens; and making it assets for the payment of debts and of all lawful demands, and finally chapter 116, (Code of 1860,) which, by its title, professing to prescribe general rules as to the creation and limitation of estates, and their qualities, deals with the subject expressly and by name.

"The 18th section would seem to comprehend within its letter vested estates only, and in this restricted and literal sense to have no direct bearing on the question, except that it causes to cease the reason of the rule; but the 19th section is something more than a mere exception; it embraces the point involved in its letter, if not in its meaning; it is a rule of action, a standing admonition to all grantors, who undertake thereafter to convey estates, to all testators who thereafter conceive the intent, and undertake to put in authentic form a devise of an estate to a person in his own right, that if they intend that the part of the one dying should then belong to the other, they must make such intent manifestly appear from the tenor of the instrument; and that if they make their devisees joint-tenants simply, as at common law, they shall be held to intend that the part of the one dying shall *not* then belong to the others, except as a matter of convenience in the case of executors and trustees, who are invested with the legal title as a matter of trust. This section therefore, deals with the testator's intent in regard to survivorship, and with the form he must adopt to make that intent appear, both of which, in the nature of things, necessarily precede the vesting of the estate.

"In this case, the testator, with this law before him, made this devise to his two sons in their own right, using

apt words to make manifest his intention that the part of Anderson, the one dying, should not then belong to Christopher.

"We have authority for saying that this rule is a consequence of the doctrine of survivorship. See 1 Jarman, side page 168, and authorities cited, and Smith, J. W., on Real and Personal Property, side page 810. When a testator left an estate to two sons as joint-tenants, he was presumed to intend, that if one died after the testator, the other should have the whole. Was it not both reasonable and natural to infer from this, that he intended the same thing if one died in his life-time?

"As the courts were seeking to find out and effectuate the testator's intent, it is not easy to see how so obvious a rule of construction could have been avoided, as a consequence of joint-tenancy. So, in this case, being required to find out and carry into effect the intent of a testator who made his will with the statute before him, are we not led by precisely the same reason, operating with the same force to a different conclusion?·

"Here we have a testator making it manifest by apt words, and in no way could he have made it more so, that his intention was, if both survived him, and one then died, that the other should *not* have the whole, would it not be a strained construction to impute to him, from the same set of words, the opposite intent, if one devisee should die in *his* life-time? It would seem to be giving to the one phrase two coincident and repugnant meanings, and tends strongly to confirm the view that the old rule of construction was a consequence and part of the doctrine of survivorship.

"Nor is it a satisfactory answer to say that we have another rule of construction which, in certain cases, leads to the same result. Where there is a devise to a class as such, the members who compose it are generally unnamed and regarded as fluctuating, and until the death of the testator, indeterminate. The rule as to classes results from the construction that the devise is

not to certain determinate persons, who now answer the description of children, descendants, or next of kin, of A., but to those as a class who shall be in life and ready to take, answering and filling that description, when the will becomes consummated by the testator's death; being similar to the rule of the civil law, with this difference, that their rule was also extended to, and covered a part of the same ground which, with us, was ruled by the doctrine of survivorship as an incident of joint-tenancy and its consequences. The civil law rule shows that the same end may be reached in different ways, that the doctrine of *jus accrescendi,* or of survivorship, in the partial and limited degree in use among them, might not be unreasonable, and if once adopted and made known to testators, not inconvenient, especially where the doctrine had never been further extended, and there had been no occasion to abolish it in whole or in part. And it shows still further that in order to determine the present status of our law on the subject, with its common law basis, and statutory modifications, it is safer to look carefully to our statutes abolishing survivorship, and modifying joint-tenancy, to see what exceptions and savings they have made, rather than by the light of civil law analogies, no matter how reasonable, to search for some theoretical place where our law-makers might have stayed their hand without further inconvenience. No saving or exception is found, except the one of executors and trustees, which only tends the more strongly to show that all the rest has been swept away. The courts have, as one of their rules, to construe, other things being equal, against a lapse. But it has never been carried to the extent of impressing tenancy in common with the quality of survivorship; and therefore cannot be expected to have that effect upon common law joint-tenancy, made by statute, like tenancy in common, so far as survivorship is concerned.

"It is hardly necessary to say that the construction contended for by plaintiff finds no support, and a continu-

ance of the old rule no reason or foundation, in the fact that the testator permitted his will to stand unchanged, after the known death of one of the devisees; for that would be taking an event which happened after the making of the will, as introducing retroactively, without codicil or change, a new intent, by extrinsic implication. It is the intent of the testator at the time of making his will, which alone the law seeks after and adopts. The effects of the will may be changed by events happening after, but not the intent.

"Much of this seems to go upon the supposition that the rule in question has ceased to exist, because the doctrine of survivorship, which gave rise to it, has been abolished. But we wish to repeat that the conclusion reached rests principally upon the ground that the rule itself is regarded as within the express letter of the admonition given by the 19th section to testators, as to the meaning and construction which will be given to their devisees, if thereafter limited and created in certain accustomed forms, and all else is added as but cumulative in its effect, and as tending to show that it is also within the meaning and scope of the statute.

"And the construction here contended for receives additional weight in view of another statute on the same general subject, which also shows that not only the common law but the statute in this instance, as in many others, treats of estates created and devisees named before as well as after the death of the testator. In fact, for purposes of construction, the one necessarily presupposes the other. Section 13, of chapter 122, (Code of 1860,) reads as follows: 'If a devisee * * * die before the testator, leaving issue who survive the testator, such issue shall take the estate devised * * * as the devisee * * * would have done, if he had survived the testator, unless a different disposition thereof be made or required by the will.' Whatever other purposes there may have been sought to be accomplished by this section there is one about which there can be no

doubt. It was intended to prevent a lapse in certain cases. This purpose is avowed in the sections from which this one was taken, and appears by necessary implication from its own language, especially the conclusion. The manifest purpose of this section is, in the given cause, to prevent a lapse, by substituting the issue as donees in the place of the ancestor. For, if the testator has already provided for the contingency by making a different disposition, then this section can have no effect. Now, if the testator had intended to impress this estate with the quality of survivorship, he would, in obedience to the 19th section of chapter 116, have caused it to appear manifest from the tenor of his will, as an expressly created quality, and in that event, the issue of Anderson Hoke, who survived him, would have taken nothing, because of this other and different disposition being made and required by the will. As it is, the surviving issue of Anderson Hoke would certainly take his part under this section; and if so, it would be upon the legislative supposition that otherwise there would be a lapse. If, however, they would not take under either mode of limitation, then this section has the effect of not only preventing a lapse, but of rendering these two modes of limitation equally efficient to prevent a lapse, and to prevent its operation, which, in view of the language and requirement of the 19th section, of chapter 116, would seem to be absurd.

"We are led, therefore, by the language of his will, to conclude that this testator did not intend any of his children to have a double portion, by survivorship, either before or after his own death; for he has named them in that respect under the statute with the same meaning and effect, as if he had expressly made them tenants in common.

"And if he contemplated this, or any other of the many contingencies which frequently happen, to change, not the meaning, but the effect of wills, he has not provided for it—being satisfied, we may presume, with the provis-

ion made by law; knowing that if his son, Anderson, left issue living at his, the testator's death, they would take his part, and if he left none, then it would go to his brothers and sisters, the testator's children, who also, would have been Anderson's heirs, if it had been given to him by deed instead of by will. What nearer approximation can be made, to what we may fairly presume, to be the general intent of testators, under like circumstances?"

The following authorities elucidate the principles enunciated in the foregoing opinion: *Myles* v. *Boyden*, 3 Pick. 213; *Davis* v. *Smith* 4 Harr. (Del.) 68; *Mowatt* v. *Carow*, 7 Paige, 328; *Rhodes* v. *Holland*, 2 Yerg. 341; *Craycraft* v. *Craycraft*, 6 Harr. & J., 54; *Mebrue* v. *Womack*, 2 Jones, (N. C.) Eq., 293; *Johnson* v. *Johnson*, 3 Ired. Eq., 429; *Sawyer* v. *Trueblood's ex'or*, 1 Murph. (N. C.) 190, this is a case in point; 1 Tuck. Com. (side p.) 298 *note*.

The views presented by Judge Holt in the foregoing abstract we regard as sound and conclusive of the question. Moreover, the ruling of the circuit court is in harmony with the legislative intent. The Legislature, by a number of statutes, has shown its determination to destroy every vestige of the common law doctrine of survivorship *and its incidents*, except in the cases of trustees, &c.

But, if the court should hesitate to adopt the views just presented, it is confidently submitted that a proper construction of the 14th section of chapter 122, Code Va. 574, will remove all doubt upon the matter. This section provides, that "unless a contrary intention shall appear by the will, such *real estate or interest therein* as shall be comprised in any devise in such will, which shall fail or be void, *or otherwise incapable of taking* effect, shall be included in the *residuary devise*, (if any), contained in such will."

If the words, "or otherwise incapable of taking effect," do not apply to the devise of Anderson R. Hoke in this

will, then it would be difficult to conjecture a devise to which they would apply. The words, "shall fail or be void" seem to be sufficiently comprehensive to cover almost any case, but to put the matter beyond question, the general clause is added to embrace every possible case. The 10th *Item* of the will under consideration makes the four sons of the testator, one of whom is Anderson, his residuary devisees. Thus, we have a case which is specifically provided for by this statute. The subject is an *"interest in real estate,"* the devisee being dead at the time the will takes effect, *the devise is "incapable of taking* effect," and the will contains a "residuary devise." Therefore, we conclude that the devise to Anderson passed to the residuary devisees, and Anderson being one of the residuary devisees, his portion of the residuum passed to the heirs of the testator. *Frazier* v. *Frazier's ex'or*, 2 Leigh. 642.

HAYMOND, JUDGE, delivered the opinion of the Court:

In April, 1867, Christopher Hoke brought suit on the chancery side of the circuit court of Greenbrier county, against Eli Rogers and his wife and others. Afterwards, at the June rules, 1867, of said court, the plaintiff filed his bill in said cause, in which he alleges substantially, that on the — day of May, 1863, Christopher Hoke, Sr. died, he having first made and published his last will, which was proven at the May term, 1863, thereof, under Confederate rule, and was also proven at April term, 1866, of the circuit court of Monroe county; that by said will, plaintiff and one Royal Fleshman were appointed executors; that at the time of the death of said Hoke, he and his appointed executors lived in the counties of Greenbrier and Monroe, and within the lines and jurisdiction of the government in fact, called the Confederate States; and that the Virginia government at

Richmond was part and parcel of said government in fact, and, as such government in fact, exercised jurisdiction and authority in the county of Monroe, in which said Hoke lived and died.

Plaintiff further alleges, that he had been raised and all his life lived in the counties of Monroe and Greenbrier, and never knew any government, except that at Richmond, to exercise local jurisdiction over those counties, and he verily supposed the Richmond authorities the rightful ones, and therefore went into the county court of Monroe county, at its May term, 1863, and proved the will of said Hoke, and gave security, and took out letters testamentary. That at the June term, 1863, of said county court the other executor, Royal Fleshman, appeared, took the oath and qualified as executor; that under said authority said Fleshman and plaintiff, advertised and sold the personal property, and took bonds for the same, amounting to the sum of $——, as the sale bill will show; that there were some negroes left by the decedent, supposed to be slaves; these were nominally sold. Two of them were knocked off to plaintiff at $——, and plaintiff supported them, until it was finally recognized, that they were free, when they left plaintiff; that some or all the lands, directed by the will to be sold, were sold, and the parties have in some instances, refused to carry out the sales, on the ground that the sale having been made under letters granted to plaintiff and Fleshman in a Confederate court, the sale is not binding; that at the sales, made of the personal property the terms of the sale were twelve months' credit on all sums over $20.00; and $20.00 and under were to be paid in money; and Confederate money was the only currency and money then in vogue, consequently a considerable sum was actually taken in Confederate money; that this Confederate money with other that was received and on hand, was funded by virtue of the law of Virginia, and of the Confederate States, then and here supposed to be the law in force, and some of this Confederate money re-

mains in the hands of plaintiff; that said Confederate money was partly received by plaintiff and partly by said Fleshman co-executor; that in April, 1865, General Lee surrendered himself and army, and the Virginia government at Richmond and the Confederate States ceased to be governments in fact in Monroe and Greenbrier counties, and the governments of the State of West Virginia and of the United States assumed jurisdiction in said counties, and thereupon at the April term, 1866, of the Monroe circuit court plaintiff went into the circuit court of Monroe county, and proved the said will and qualified as the executor of C. Hoke, deceased, Royal Fleshman having died in the meantime. Upon this qualification under this last jurisdiction, the personal property having been disposed of, the negroes declared free, the lands directed by the will to be sold, having been sold either properly or improperly, plaintiff has been enabled to do but little, he has made some settlements with the commissioner appointed by the recorder, and in due time these will be filed and asked to be taken as a part of this bill; that some portion of the legacies have been paid, but not all because the fund, out of which they were to be paid, has not been realized. By reason of the decisions of the courts he has not been able to collect the funds, for which the personal property was sold.

A difficulty has grown out of the 10th clause of the will. The legatees contend that the three surviving brothers take the residuum, whilst others of the children contend that Anderson R. Hoke's part lapsed and must be distributed to all the children. Again in the 5th clause of the will there is a devise to Christopher Hoke and Anderson R. Hoke, and the said Anderson having died before his father, plaintiff is advised, that he took all the property in that clause mentioned, whilst others contend, that Anderson's part lapsed and passed under the residuary clause. That under the 9th clause of the will plaintiff, Henry Hoke and John M. Hoke, agreed,

that the said land should be sold to plaintiff at the price of $30.00 per acre, the sum specified in said clause, and thereupon the plaintiff sold to John M. and Henry Hoke one-third each of said land, and each party took possession of his respective part.    That plaintiff is unable to administer said estate without the aid of a court of equity, and he comes into court to have the will construed and the estate settled ; and he prays, that the devisees and heirs of said C. Hoke, deceased, and the creditors of the estate may be convened, and said estate may be settled, the debts and legacies paid, and the whole estate administered in a court of equity ; and that the accounts of plaintiff and Royal Fleshman, as executors of said estate, may be settled up; and that he may have such other further relief as to equity belongs and the facts of his case may warrant.

The last will and testament of Christopher Hoke, deceased, appears by an official copy thereof, filed with plaintiff's bill, and is as follows, viz :

" I, Christopher Hoke, of the county of Monroe and State of Virginia, being of sound and disposing memory, do make and constitute, and ordain this my last will and testament, in manner and form following, to-wit:

" Item I. I will and devise that my executors hereinafter mentioned, do first pay my funeral expenses—any debts that I may owe.

" Item II. I will and bequeath unto my wife, Nancy Hoke, during her natural life, all that portion of my home plantation, being the same on which I now reside, lying and being on the southeast side of the great road leading from Rocky Point in the said county to my mills, to manage and dispose of as she may deem best for her interest with all the appurtenances thereunto belonging ; but my said wife Nancy is not to waste or destroy, or have it done, any timber on the said premises, not however hereby imposing any restraint upon her with regard to her using any timber, that may be necessary for firewood and for keeping said premises in re-.

pair. I also give and bequeath unto her, my said wife,

two good horses, four milch cows, one good, large two-horse plow, two pair of horse gears, one large harrow, ten head of sheep, ten head of hogs, three feather beds, and three bedsteads, and necessary bedding for the same; my eight-day clock, and as much of my household and kitchen furniture, as she may think necessary for her comfort and convenience, and my two-horse wagon.

"Item III. I will and bequeath unto my son Henry Hoke, my plantation lying and being in the county of Monroe, adjoining the lands of Samuel Gurgun, Jacob Fleeke and others, which is said to contain one hundred and eighty acres, be the same more or less, with all the appurtenances thereunto belonging, to him and his heirs forever.

"Item IV. I will and bequeath unto my two grandsons, Westly Hoke and Albert Hoke, sons of my son Henry, Hoke, my tract of land lying and being in the county of Monroe, on Gwinn's mountain, estimated to contain two hundred acres, be the same more or less, adjoining the above named tract bequeathed to my son, Henry Hoke, to them and their heirs forever, upon condition that they, the said Westly Hoke and Albert Hoke pay to Sarah A. Hoke the sum of $50.00; to Lucinda Hoke the sum of $25.00; and to Henrietta Hoke the sum of $25-00; which sums are to be paid them at the decease of Henry Hoke, their father. And I further direct that my son, Henry Hoke, have the management and control of said plantation during his life-time. Should either the said Westly or Albert Hoke desire to sell his interest, he is to give the other brother refusal of the same at a fair valuation.

"Item V. I will and bequeath unto my two sons, Christopher Hoke and Anderson R. Hoke, jointly, my mill-tract of land, estimated to contain about four hundred acres, be the same more or less; the John Peters tract, estimated to contain two hundred and forty acres, be the same more or less, lying and being partly in Monroe and

partly in Greenbrier counties and adjoins the above named mill-tract, James M. Nickell and Wm. T. Mann; and my Beem tract of land, lying and being in the county of Greenbrier, adjoining the lands of Robert Morehead, Wm. T. Mann and others, and is said to contain eighty-four acres, be the same more or less, with all and singular the appurtenances belonging to the said tracts of land (mills, grist and saw included), to them and their heirs forever. And I further direct that the said Christopher Hoke and Anderson R. Hoke pay to my son, John M. Hoke, the sum of $1,000.00, to be paid in five annual equal installments; and that they also pay unto my son, Henry Hoke, the sum of $300.00, to be paid in two annual equal installments.

"Item VI. I will and bequeath to my son, John M. Hoke, my tract of land called the Murdock tract, said to contain fifty-nine acres, be the same more or less lying and being in the county of Monroe, adjoining the lands of James Dunsmore and Addison Perry; my tract of land containing eleven acres adjoining the land of Addison Perry, and known by the name of the Erskine tract; and my tract of land containing one hundred and sixty acres, be the same more or less, and adjoining the lands of Addison Perry and others, and is known by the name of the Malcom tract, with all the appurtenances belonging to the said tracts of land, to him and his heirs forever.

"Item. VII. I will and devise, that my executors, or either of them, sell at public sale my tract of land in the county of Monroe, adjoining the lands of H. Holsapple, Alex. Jackson and others, commonly known as the Hoke place, and is supposed to contain one hundred acres; a tract of land on the Rich Mountain, containing two hundred and forty acres, lying in Monroe county; and the tract of land commonly known as the Lake place and is adjoining the lands of Robt. Campbell, James Nickell and others, and is said to contain one hundred and fifteen acres. I further direct that the said tracts of

1878.
Special Term.

Hoke, ex'or, &c.
v
Hoke et al.

land above named be sold on a credit of six, twelve and eighteen months, and out of the proceeds of the sale thereof, pay to my daughter Sarah Vincent the sum of $500.00; to my daughter Mary Nickell the sum of $500.00; to my daughter Charlotte Rogers the sum of $500.00; and to my daughter Elizabeth Fleshman the sum of $500.00; and to my daughter Susan Hoke, the wife of Henry Hoke, the sum of $500.00. And I further direct that my executors also pay out of the proceeds of said sale $50.00 each to Washington Lemons, Delila Hawkins, Malinda Lemons and Virginia Lemons, my grand-children and children of my daughter, Adeline Lemons; and should there be any residue of the said proceeds of the sale of said lands, after paying the legacies directed in this 7th item of this my will, then I direct the same to be divided equally between my sons Christopher Hoke, Anderson Hoke, Henry Hoke and John M. Hoke.

"Item VIII. I will and direct that my house and two lots in the town of Covington and fifty-one acres of land lying and being in the county of Monroe, adjoining the lands of James Dunsmore, be sold by my executor as soon as convenient after my decease, for the best price that can be obtained for it. And I further direct that the said tract of land be purchased by some member of my family, and that the proceeds of the sale thereof be divided equally between my four sons above named.

"Item IX. I will and direct that the plantation willed to my wife Nancy Hoke in the second item of this my will, be taken by some one of my four sons above named at the decease of her, the said Nancy Hoke, at $30.00 per acre; and he, to whom the said land may fall, is to have reasonable time to pay for same, and that the proceeds of said sale of said land be divided equally between my four sons, Henry Hoke, Christopher Hoke, Anderson R. Hoke and John M. Hoke.

"Item X. It is my will and desire that after my death all my property of any kind, not hereinbefore mentioned

or disposed of, shall be sold by my executors, and the proceeds thereof together with any debts or money on hand, applied to the payment of my debts; and the residue of said proceeds, if any, after having been applied as above, be divided equally between my four sons, viz: Henry Hoke, Christopher Hoke, Anderson R. Hoke and John M. Hoke. And I further direct that if any of the legatees mentioned in this, my will, become dissatisfied and go to law concerning this will, he is to forfeit his whole interest in the same, which is to be divided equally amongst the other legatees. And lastly, I do hereby constitute and appoint my son, Christopher Hoke, and Royal Fleshmen, executors of this my last will and testament, hereby revoking and cancelling all other wills and testaments made by me. In testimony whereof, I have hereunto set my hand and affixed my seal, this 28th day of August 1857.

his
"CHRISTOPHER ⋈ HOKE, [Seal.]
mark

"Signed, sealed and acknowledged as the last will and testament of Christopher Hoke, in the presence of us, this 28th day of August, 1857.

"ANDREW CAMPBELL,
"ISAAC CAMPBELL."

The will by the certificates attached appears to have been admitted to record by the county court of Monroe, at the May term thereof, 1863, and by the circuit of same county on the 19th of April, 1866.

On the 22d day June, 1870, the plaintiff, by leave of the court filed an amended bill, in which he alleges substantially, that on the 27th day of June, 1863, plaintiff, Henry Hoke (son of the testator) and John M. Hoke, being the survivors of the four sons, to whom the farm in the 9th clause of testator's will was devised, and which by the terms of the will was to be taken by one of the sons by lot, agreed that it should be held, that lots had been cast, and the lot had fallen on Henry Hoke, and he should convey to plaintiff and John M. Hoke each,

one-third of that place. The agreement is filed as an exhibit marked (O). That the agreement was initiate only, looking to further action, was never stamped, was never complied with, and has no validity as plaintiff is advised, as well because of its incompleteness, as because it will be necessary to sell said land to pay the debts and legacies of the testator.

Plaintiff charges, that soon after said agreement was made, the parties took possession, each of one-third of said home farm, and have used and enjoyed the same until the present time, and they are each responsible for the rent thereof; and plaintiff prays, that the said land be sold to pay the debts of the testator, and that the parties may be compelled to account for rents; or if the court should determine that the parties had the power to agree as the writing shows, and that the agreement. ought to be executed, then plaintiff prays that the parties may be compelled to execute the same, &c.

It further appears by the record, that on the 22d day of June, 1870, Henry Hoke, a son of the testator, having died, the cause by consent was revived against the administrator, widow and legal heirs, &c., of said Henry Hoke, deceased. A number of depositions were taken in the cause, but no answers appear to have been filed by any of the defendants, and several decrees were made in the cause prior to the 26th day of April, 1871, which I deem unnecessary to notice further at this time, and on the day and year last aforesaid, John M. Hoke and several other defendants, presented their petition to the court praying for a re-hearing of the cause; and on consideration whereof the court ordered, that said petition. be filed, and the prayer thereof, as to the re-hearing be granted, upon the petitioners, or some one of them, filing with the clerk of the court bond with good security in the penalty of $500.00, conditioned to pay all costs occasioned by a re-hearing of the cause, in case the order and decree theretofore rendered, should after such rehearing be affirmed.

On the 16th day of October, 1871, the court, being of opinion that there were errors sufficient in the decrees and orders theretofore rendered in this cause, to entitle the parties to a re-hearing, "adjudged, ordered and decreed, that the said orders and decrees be set aside and annulled, excepting as to the decree pronounced at the last term of this court granting a re-hearing." And the cause was at the same time again revived against the administrator, widow and legal heirs of Henry Hoke.

By the same decree, to-wit·: the decree of the 16th of October, 1870, the cause again came on to be heard ; the court referred the cause to Alexander Walker to take, state and report, the following account, viz : "1. An account of the. administration of the estate of C. Hoke, Sr., deceased, by C. Hoke and Royal Fleshman, the executors, both while acting as such under the pretended authority of the county court of Monroe county, as well as C. Hoke since his qualification before the recorder of said county. 2. An account of the indebtedness of said estate at the time of the death of said C. Hoke, Sr., and which remains due and unpaid, stating the debts in the order of their priorities. The said commissioner shall report specially any matter deemed pertinent by himself, or which shall be required by any of the parties to this suit to be stated. The said commissioner, in settling the administration account above directed, shall charge the executors with the property embraced in the appraisement bill ; and the value, as re-appraised, shall be *prima facie* evidence of its true value, with leave to any parties concerned to show that the same was not the true value of any particular piece thereof. He is further directed to make and state such administration account on such other basis, as any party may require. He is further directed to ascertain and report the fact respecting the slaves of said estate according to the requirements of the decree, pronounced at the April term, 1870, of this court," &c.

From the said decree of the 16th of October, 1870,

the plaintiff took an appeal to this Court. And afterwards, at a term of this Court held on the 14th day of October, 1872, this Court affirmed the said decree of the 16th of October, 1870, as appears by its mandate, which is now a part of the record in the cause. Afterwards, on 29th of November, 1872, the circuit court by consent confirmed the sale of the fifty-one acres of land, directed by the will of Christopher Hoke, deceased, to be sold, which had been sold and purchased by Joseph Coffman. And the court in said consent decree of confirmation decreed, "that upon the payment of the purchase money, the land shall be conveyed to him (Coffman) according to the previous decree of the court and his purchase and title granted so far as John M. Hoke is concerned; and if the chancellor shall be of opinion, or should it be held by any other court of law or equity in any other suit the said John M. Hoke may choose to bring, that any part of the said fifty-one acres of land belonged to John M. Hoke by virtue of a devise from his father, then said John M. Hoke shall be entitled to so much of the consideration money of said land as he shall be able to show title to; but the commissioner receiving said purchase money shall retain the same, until indemnity be given to said John M. Hoke against any deficiency in said fund to meet his claim when established as above provided."

On the 8th of May, 1873, Alexander Walker, the commissioner to whom this cause had been referred having died, by consent of parties James Withrow was appointed a special commissioner to take said account, in the room and stead of commissioner Walker, and report to court, as required of said Walker by the order of his said appointment.

Afterwards on the 14th of June, 1873, the parties appeared, by their counsel; and John M. Hoke tendered his answer, which was made a cross-bill; and the plaintiff objected to the filing of the same, and his objection was overruled, and the said answer made a cross-bill,

was filed; and the plaintiff, Christopher Hoke, executor, &c., by leave of the court filed a reply and answer to the said answer and cross-bill of the defendant, John M. Hoke; and the said John M. Hoke replied generally to the said answer to his cross-bill.

The answer and cross-bill of John M. Hoke is as follows, viz: "The separate answer of John M. Hoke to a bill, filed in the circuit court of Greenbrier county, against him and others by Christopher Hoke, Jr., executor, &c. This respondent for answer to said bill says, that Nancy Hoke, the wife of the testator, C. Hoke, Sr., departed this life before the death of said C. Hoke, Sr.; that by the 6th clause of said C. Hoke's will the testator devised to this respondent, three tracts of land: one of fifty-nine acres, called the 'Murdock tract,' the second of eleven acres, known as the 'Erskine tract,' and the third of one hundred and sixty acres, known as the 'Malcom tract;' that in the 8th clause of said will, the testator devises fifty-one acres of land to be sold by his executors, and the proceeds divided equally between his four sons; that as a fact, respondent avers that, exclusive of the land devised to him as aforesaid, the testator had but thirty-five or forty acres of land adjoining James Dunsmore, being a tract known as the 'Tincher tract,' and which was supposed to contain fifty-one acres, and which may embrace that number of acres by taking a part that lies across the public road, which respondent claims was originally, and is now a part of the said 'Tincher tract;' but the executors have sold a part of the 'Malcom tract,' and this respondent asks for an interpretation of the will, and claims that he should be allowed the proceeds arising from so much of the said fifty-one acres as was sold off his said 'Malcom tract,' the same being about twelve acres, worth $50.00 per acre.

"Respondent claims that Anderson R. Hoke having died in the life-time of the testator, the devises to him in the 5th, 8th, 9th and 10th clause of the will be-

1878.
Special Term.

Hoke, ex'or, &c.
v.
Hoke et al.

came void, and passed to Henry Hoke, Christopher Hoke and this respondent under the 10th clause, they being the residuary legatees in said clause; that Christopher Hoke, executor, has been in possession of all the property mentioned in said 5th clause ever since the death of the testator; that he is accountable to the estate of Henry Hoke, deceased, and this respondent for one-third of the rents and profits of said property, which amount to at least $—— per annum; that he has in no manner accounted for any part of said rents and profits; that said C. Hoke, executor, has greatly damaged said property, and otherwise impaired its value, for all of which he is accountable to respondent and the estate of the said Henry Hoke, deceased; that the property mentioned in the 9th clause of the will was, by a written agreement, dated June 27, 1863, divided between the said Henry Hoke, C. Hoke, Jr., and the respondent, as stated in plaintiff's bill; that each party took possession of the one-third assigned to him under said agreement, and has held the same as his own ever since; that the personal estate which came into the hands of the executors of said estate was more than sufficient to pay off all the debts and legacies charged upon it. Respondent therefore prays, that if proper and necessary this answer may be taken and treated as a cross-bill; that all proper accounts may be directed, and the said will of C. Hoke construed; that C. Hoke, executor may be required as executor to account for all the estate, rents and profits which did or should have come into his hands of said estate; that he may be required to account for the rents, profits and use of, and damages done to the one-third of the property mentioned in the 5th clause of the said will, and that such other, further and general relief may be granted as shall be proper in this case," &c.

The reply and answer of C. Hoke to the answer and cross-bill of John M. Hoke is as follows, viz:

"*The answer and reply of Christopher Hoke against John M. Hoke and others.*

"He admits the death of Nancy Hoke as charged. This respondent, the plaintiff, denies that exclusive of the land devised to him as aforesaid, the testator had but thirty-five or forty acres of land, adjoining James Dunsmore, being a lot known as the 'Tincher tract,' which was supposed to contain fifty-one acres, which may embrace that number of acres taking a part that lies across the public road, which respondent claims was originally and is now a part of 'Tincher tract.' He denies that the executor or executors have sold a part of the 'Malcom tract;' and he denies that he, as executor, or otherwise had sold any land devised to the said John M. Hoke. He says by the 8th clause of his father's will he directs that his fifty-one acres of land lying and being in the county of Monroe, adjoining the lands of James Dunsmore, be sold by his executors. This plaintiff says that he has sold the fifty-one acres directed by the will to be sold, and he has sold no more, nor has he sold any land willed or devised to John M. Hoke, and he flatly denies the charge that he has sold any part of the 'Malcom tract,' or any tract belonging to John M. Hoke; and he denies that John M. Hoke should be allowed the proceeds arising from so much of said fifty-one acres sold off his 'Malcom tract.' He denies that there were twelve acres, or any part thereof, of the 'Malcom tract' sold, and he denies that it was worth $50.00 per acre. This plaintiff denies that John M. Hoke has any manner of interest in the property, by the 5th clause of the will devised to Christopher Hoke and Anderson R. Hoke jointly; Anderson R. Hoke died during the lifetime of the testator, and this plaintiff, as survivor, took the whole estate. He denies that he is bound for the rent of said property to John M. Hoke, as the property belongs to affiant. He denies that John M. Hoke has any interest therein. He denies that the property is worth at least $——per annum. The

rent is worth nothing. To keep the mill in repair, as he has done, is worth more than the rent of the property. Besides, he has expended large sums in repairing said property, and if he does not own the property, he asks to be allowed for the repairs; and he denies that he had greatly, or otherwise, damaged said property. But he pleads and relies upon the fact that there is a suit in this honorable court already brought for the construction of the will, and for the one-half of the property devised to 'Christopher Hoke, Jr., and Anderson R. Hoke jointly.' It is the suit of Elizabeth Fleshman and others against this plaintiff, Christopher Hoke and others, in chancery, and that suit is pleaded and relied on as a bar to the remedy sought by the answer and cross-bill. As to the property mentioned in the 9th clause of the testator's will, this plaintiff says at the death of the testator, the country was involved in war; the currency was inflated; Confederate treasury notes were almost the only currency; it was not only exceedingly unpopular to refuse to take Confederate money—this inflated currency—but it was contended by many that Confederate treasury notes were lawful tender, and the parties, Henry Hoke, John M. Hoke and the plaintiff, were unwilling to sell the land mentioned in the 9th clause of the will for the currency; and they feared if they sold it at all they would be compelled to take that sort of currency, and that sort of currency would not pay debts due from the testator. Under this state of affairs the parties agreed to divide said lands, and hold them as divided until the war should be over and the currency settled, and then if the testator's debts could be paid without the sale of this land, the home place, the parties were to hold it according to the divisions. But the said plaintiff says that it was never intended to withdraw said land from the operation of the will and the debts of the testator, and he denies most positively that John M. Hoke ever claimed the part assigned to him as his own. He has held the same under and in subjection to

the trusts of the will. This plaintiff denies flatly and positively that the estate that came to the hands of the executors was more than sufficient to pay off the debts and legacies charged upon it. He denies that it was anywise sufficient to pay them. It was greatly less than enough to pay them. And this plaintiff denies every allegation of the answer and cross-bill not hereinbefore admitted. On June 21, 1873, this order was entered in the cause : " Robert F. Dennis and James W. Davis having reported that they have in their hands the sum of $1,262.95 collected on the sale of the fifty-one acres of land sold in this cause by the said Davis and Dennis, it is by consent, ordered, adjudged and decreed that the said Dennis and Davis do loan out said money on bond and approved security, payable in six months from date and bearing six per cent interest." And on the day and year last aforesaid the court made this further decree by consent, viz : " Each party having excepted to the report of special commissioner James Withrow, and the court not being advised and not determining any thing at this time as to said exceptions, it is by consent, ordered, adjudged and decreed, that this cause be again referred to James Withrow, commissioner of this court, to make an additional report and state the account between the plaintiff as executor of C. Hoke, deceased, and the legatees of said C. Hoke, deceased, and any other matters deemed pertinent by himself, or required by either party ; and notice to the counsel shall be sufficient notice to all the parties." At a circuit court held for Greenbrier county, on the 26th of November, 1873, Christopher Hoke, executor of C. Hoke, deceased, plaintiff v. Christopher Hoke's heirs et al., defendants ; and Henry Hoke and Virginia S., his wife et al., plaintiffs v. Christopher Hoke et al., defendants. In these causes at the date last aforesaid the court made and entered this decree, viz : " These two causes came on this day to be heard together, by consent; the first upon the papers heretofore read, the report of commissioner James With-

row, with the exceptions filed thereto by both the plaintiff and defendants, the facts agreed which are filed with the papers and marked X. Y., the depositions of witnesses with the exceptions thereto by both parties; and the second, upon the bill, process duly executed upon the home defendants, and order of publication against the absent defendants, the answer and amended answer of Christopher Hoke, with replication thereto, the bill taken for confessed as to the other defendants who have failed to appear and answer, and upon the argument of counsel. On consideration whereof, and the court being of opinion that the matters complained of in said second cause are all involved in said first cause, and that there was no necessity or excuse for instituting said second cause, it is therefore ordered, adjudged and decreed, that the bill be dismissed, and that the plaintiff therein pay the defendant, Christopher Hoke, his costs; and as to the matters submitted in the first of these suits, the court doth adjudge, order and decree, that by the death of Anderson R. Hoke, without children or descendants, in the life-time of the testator, the devise to him in the 5th clause of the will of C. Hoke, deceased, lapsed and did not pass to C. Hoke, Jr., as the surviving devisee, but that C. Hoke, Jr., took only one undivided half of the entire devise under said 5th clause, and the other half passed to the residuary legatees in the 10th clause of the will, except the part of Anderson R. Hoke, who was also named as one of the residuary legatees, which passed to the heirs general of the testator, including said residuary legatees as part of said heirs. And the court is further of opinion that the testator in the 8th clause of said will, used the terms 'fifty-one acres of land, &c.,' as descriptive of the tract or parcel of land to be sold, and not as the designation of the exact quantity of acres to be sold; and that it was not the intention of the testator if the said tract did not actually contain fifty-one acres, to make up the deficiency in quantity from the adjoining lands, which had been specifically devised to John M.

Hoke in the 6th clause of said will; but not having before it sufficient evidence to determine with certainty that the fifty-one acres heretofore sold in this suit to Joseph Coffman, embrace, as said John M. Hoke claims, part of the lands devised to him in the said 6th clause, the court doth refer the matter to commissioner James Withrow, who is directed to ascertain and report what portion, if any, of the said fifty-one acres sold to Joseph Coffman as aforesaid, is included in the devise to John M. Hoke in the 6th clause of said will, the number of acres and value thereof, both in relation to the other part of said fifty-one acres sold to Coffman and to the remaining lands of the said John M. Hoke, and if said commissioner deems it necessary, or is required by either party, he is authorized to employ a surveyor to survey said land, and also to examine witnesses in relation thereto ; but he shall return with his report all the evidence before him upon this inquiry. Without passing *seriatim* upon the numerous exceptions of the plaintiff and defendants to the report of commissioner Withrow, the court being of opinion that said report should be recommitted, doth give the following instructions which will dispose of all the material questions raised by said exceptions.

" 1st. Under the peculiar circumstances of this case, C. Hoke should not be charged with the slaves ; either as executor or as creditor, or legatee or purchaser ; nor should any of the other legatees be charged with any slaves purchased by them of the estate.

" 2d. The price of the one hundred and fifteen shocks of corn, which it is proven was paid in Confederate money, and in good faith funded by the executor, should be set-off against the certificate of the Confederate States for $1,400.00 ; and neither should be charged or credited.

" 3d. It not appearing, that Royal Fleshman did anything as executor, except to act as such in the sale of the personal estate, and convert the same into money and bonds, which were all turned over to the co-executor, C.

1878.
Special Term
Hoke, ex'or, &c.
v.
Hoke et al.

Hoke, consequently, unless by said sale and conversion, he committed a *devastavit* in some way, he is not chargeable with any.

" 4th. That in the construction of the will of the testator, and the settlement of the estate, it was right and proper for the executor, as he has done, to invoke the aid of this Court; and that being advised by judicious counsel, it was not improper for him to appeal the suit to the Supreme Court; the Court therefore holds that the executor should be allowed for reasonable attorneys' fees paid by him in this suit, in addition to the taxed costs; and that in any other proper suits upon claims due the estate, the executor is entitled to an allowance for the fees of attorneys employed by him, together with reasonable compensation for any extra services rendered by the executor in attending to such suits, but that such allowance should be based upon an itemized account of actual expenses and charges for services rendered.

" 5th. The commissioner properly refused to allow the executor credit for the judgment against John M. Hoke; the proof was insufficient; but in any instance, including this claim on John M. Hoke, when the executor can show that any claim due the testator's estate is unavailable and uncollectable, and that in all matters relating thereto, he has exercised ordinary discretion and due diligence without avail, he should be entitled to a credit for the amount he has been charged with on account of such claim, with all the proper taxable costs incident to the same, but such costs should not be allowed until and unless he shows himself entitled to credit for the debt in the manner aforesaid.

"6th. The lands devised to pay legacies, should not, in the first instance, be charged to the executor, but should be kept separate and in the legatee account, subject however to be brought into the executorial account, if required to pay debts.

"7th. In regard to the building of the Crigler house, the mill-dam, powder-mill, repairing mill, &c., the court

concurs with the commissioner in his first statement, and holds that the same should be setoff against the rents of the mill accruing prior to the death of the testator, and that no balance should be allowed either way.

" 8th. The commissioner properly set off the items paid by the executor from June, 1863, to June, 1864, with the Confederate money on hand at the death of the testator, and he also properly disallowed the taxes paid by the executors on the lands specifically devised; these taxes may however, be properly chargeable to the devisees of the lands upon which they were paid in the legatee accounts. In all respects wherein said reports of commissioner Withrow are not changed, modified and corrected in the foregoing directions, the same is approved; and all exceptions thereto, by both the plaintiffs and defendants, inconsistent with said report so modified and corrected, are overruled, and so far as they are consistent therewith, are sustained.

" And the court doth sustain so much of the defendants' exceptions to the depositions of Christopher Hoke, as relates to conversations had personally with the testator, C. Hoke, deceased; and doth overrule the plaintiff's exceptions to the depositions of William Campbell, Philip Boyer, David S. Hern and others, taken before Alexander Walker, at his office in Lewisburg, on the 12th, 13th and 14th days of March, 1873. It is therefore adjudged, ordered and decreed, that said report be re-committed to James Withrow, with directions to re-state and modify the same upon the principles, and in the particulars hereinbefore indicated, and that he shall separately state the legatee accounts; that in taking said legatee accounts, he shall charge C. Hoke, Jr., with 26.72 of the rents and profits of the estate devised in the 5th clause of the will of C. Hoke, Sr., and such damages as he may have committed in regard thereto, since the death of said testator, subject to all proper credits against said rents, and profits, and damages, for taxes and permanent improvements, subsequent to the death of C. Hoke, Sr.; that the

parties shall be allowed to take further proof in order to support any charge or credit against or in favor of the estate of C. Hoke, whether heretofore reported or not; and in view of the likelihood of the necessity of an abatement from legacies for the payment of debts, he is directed to ascertain and report, as far as he can, the facts proper for making such abatements ratably, and report to court, together with any other matter he may deem pertinent, or any party in interest may require; and he shall convene the creditors according to law. And leave is given to re-take, before the commissioner, the testimony of any witnesses hereinbefore examined. But before taking said accounts, said commissioner shall give notice to the parties or their counsel."

" At a circuit court continued and held for Greenbrier county, at the court house thereof, on Saturday, Nov. 21, 1874, Christopher Hoke, executor, plaintiff, *v.* Christopher Hoke's heirs *et al.*, defendants, and John Dunsmore, administrator, *et al.* plaintiffs *v.* Christopher Hoke, *et al.*, defendants. These causes came on this day to be heard together; the first upon the papers heretofore read therein, the amended bill against the defendants, E. J. Fleshman and others, with process duly executed on said defendants prior to the last term of this Court, the bill taken for confessed as to the adults, and the answer of the infant defendants by their guardian *ad litem*, with general replication thereto, upon the petition and exhibit of John McCarty the deposition of witnesses, affidavit of C. Hoke, which by consent is taken as a deposition, with exceptions to said deposition and affidavit, the report of commissioner James Withrow, dated April 10, 1874, with written exceptions filed thereto by both plaintiff and the heirs of C. Hoke, deceased, upon the report of commissioners Davis and Dennis, and upon the argument of the counsel. John Dunsmore, one of the plaintiffs, in the second of these causes, having departed this life intestate, and Samuel A. Clark, sheriff of Monroe county, having been ap-

pointed as his administrator, on motion of said administrator, this cause is revived in the name of said Clark, administrator. And the said second cause coming on to be heard upon the papers heretofore read therein; the petition and answer of Wm. McMann, who upon his petition is made a defendant in said cause; and upon the petition and answer of Matthew Mann; the report of commissioner James Withrow, who by consent executed the order of reference committed to commissioner A. Walker, deceased, to which report there are no exceptions; and upon argument of counsel. On consideration whereof, it is adjudged, ordered and decreed that the plaintiff's bill in the second of said causes be dismissed as to the tract of land containing one hundred and nineteen acres, situated on Second creek, which was conveyed to the said C. Hoke by John Moorehead, which is claimed by the defendant, Wm. McMann, in his answer, and that the title of the said McMann thereto be quieted. The court doth sustain the exception to the affidavit of C. Hoke, made on the 4th June, 1874, and doth overrule all exceptions taken to the depositions by either party; the court doth also overrule all exceptions filed by the plaintiff to the report of commissioner Withrow in the first of these causes, except the 11th and 17th, which are sustained. So much of the first exception filed by the defendants, C. Hoke's heirs, to said report as relates to vouchers Nos. 74, 75, 77, 79, 80, 81, 82, 83, 84 and 85, (see page 229 this report) and the debts they represent, on page 11 of said report, is sustained sub modo, with leave to the holders of said debts to take further proof in regard thereto as hereinafter provided, and the balance of said first exception, and also the defendants' second and fourth exceptions are overruled, except so much of said second exception as relates to vouchers Nos. 112 and 113, on page six (6) of said report, (page 217 this record,) which is sustained, the court being of opinion that the executor must be charged with the debts represented by said vouchers

Nos. 112 and 113; and the third exception of the defendant is sustained to the extent of disallowing $300.00, part of the item of $1,040.00, and said item is reduced to $740.00, and the rest of said third exception is overruled. The exceptions of John M. Hoke and Susan Hoke are each overruled, and in all other respects said report of commissioner Withrow, dated the 10th April, 1874, is approved and confirmed by the court. And it appearing from said report as hereinbefore modified and confirmed, that the plaintiff as executor of C. Hoke, deceased, is indebted to the estate of his testator in the sum of $2,569.23, that being the aggregate of principal and interest of the item of $1,048.87, on page 7 (see page 220 this record) and the two judgments of $993.34 and $293.47 on page 6 of said report as of the 1st day of June, 1874; that the defendant John M. Hoke is indebted to the said estate in the sum of $1,157.93 being the aggregate principal and interest of the judgment of $993.34, on page 6 (page 217 this record) as of the 1st June, 1874; that the defendant, Henry Hoke, is indebted to the said estate, in the sum of $362.43, bring the aggregate principal and interest of the judgment of $293.47, as of June 1, 1874; and that the plaintiff, C. Hoke in his own right is indebted to the other heirs of his testator for the use and occupation of 26.72 of the mill property in the sum of $1,088.96 as of June 1, 1874, as shown on page 10 of said report, (page 227 of this record); that said estate is indebted to Samuel Price attorney, $260.00, and to James W. Davis, attorney, $740.00, as of June 1, 1874, which two last are preferred debts; that said estate is indebted to plaintiff in his own right in the sum of $3,393.20 principal, and $121.59 interest, as of June 1, 1874; and said estate is also indebted to the other creditors, whose debts are reported in said report and not disallowed by this decree, in the sum shown in said report, with interest thereon, from June 1, 1874; it is therefore, adjudged, ordered and decreed, that James W. Davis and A. C. Snyder, who are hereby made special receivers of the

court in these causes, after having filed with the clerk of this court, bond with good security, in the penalty of $10,000.00, conditioned according to law, do recover from the plaintiff as executor of C. Hoke, deceased *de bonis propriis* the sum of $2,569.23 ; from the plaintiff, C. Hoke, in his own right the sum of $1,088.96 ; from the defendant, John M. Hoke the sum of $1,159.93, and from the defendant, Henry Hoke, the sum of $362.43, with interest on each of said sums from the 1st day of June, 1874, till paid; and they are allowed to sue out execution in their names as such receivers for each of said sums ; but if they succeed in collecting the whole or any part of the said sums herein decreed against John M. and Henry Hoke, they shall credit the amount so collected to the plaintiff on said $2,569.23.

"And it appearing from the report of commissioners Davis and Dennis, filed in the first of these causes at this term, that there is in their hands to the credit of this suit $1,868.01, as of this date, of which $881.16 is due to the defendant, John M. Hoke, it is, therefore, further adjudged, ordered and decreed, that said commissioners Davis and Dennis, pay to the special receivers hereinbefore appointed the said sum of $1,868.01, and that said receivers out of said sum shall pay to John M. Hoke, the said sum of $881.16, with interest thereon from this date, and out of the balance thereof, and the said sum of $2,569.23, they shall pay the costs of this suit, and the debts hereinbefore decreed to Samuel Price and J. W. Davis, and after paying said costs and debts in full, they shall loan out any balance in their hands till the next term of this court, and that said receivers report their proceedings to this court at its next term.

"On consideration of the second of these causes, the court doth approve and confirm the report of commissioner James Withrow made therein, except as to the two first items of the account therein stated, to-wit : the one of $3,746.03, and the other, $430.00. These items being contingent, are reserved for the future action of the

1878.
Special Term.
Hoke, ex'or, &c.
v.
Hoke et al.

court; and when these items, or the amounts properly chargeable in said items, are definitely ascertained, they are to be paid in preference to all other debts against the defendant, C. Hoke, and they are not to lose their priority as fixed in said report, except that the costs of said second suit shall be first paid. And it being here admitted that the judgments reported in favor of John S. Johnson for, &c., have been fully paid, and that $90.00 were paid on the judgment in favor of Jacob Hufnagle, for, &c., on or about the 20th of October, 1874, it is ordered that said judgment in favor of Johnson for, &c., be disallowed, and that said judgment in favor of Hufnagle for, &c., be credited with $90.00 on the 20th day of October, 1874, and that with these exceptions, each and all other creditors in said report mentioned recover each severally against the defendant, C. Hoke, the respective debts, principal and interest aggregated as of June 15, 1873, reported in said report, with interest on said aggregate sums from the 15th day of June, 1873, till paid; the said sums to be paid in the order of priority shown by said report, except that judgments rendered at the same term shall be paid ratably, and that the plaintiffs and each of the petitioners in this second cause recover from the defendant, C. Hoke, their respective costs. It appearing from the reports and exhibits in these causes, that the lands mentioned and described in the *fifth item* of the will of C. Hoke, deceased, consisting of three tracts, and known as the mill-property, devised to Christopher and A. R. Hoke, are held in one equal and undivided interest by said C. Hoke and all the other heirs of the testator, and that the personal assets of the estate of said C. Hoke, deceased, will not be sufficient to pay the debts due from said estate, and that the creditors, whose debts have been reported and confirmed in the second of these causes, are entitled to a sale of so much of the real estate of the defendant, C. Hoke, in said second suit, as will pay their debts, and the *devastavit* of said C. Hoke, in the first of these suits, and the court

being of opinion that the mill-property should be first sold, it is therefore further adjudged, ordered and decreed, that J. W. Davis and A. C. Snyder, who are hereby appointed special commissioners for that purpose, unless said debts are paid within thirty days from this date, do sell said mill-property at public auction, in front of the Lewisburg hotel, in the town of Lewisburg, upon a credit of six, twelve and eighteen months, except so much in cash as will pay the costs in the second of these suits, and the expenses of sale, which shall be cash, taking from the purchaser bond with good security for the purchase money, and the title to be retained until said bonds are paid. Before making said sale, said commissioners shall give notice of the time, terms and place of sale, by advertisement for four consecutive weeks in the *Greenbrier Independent*, published in this county. But before receiving any money under this decree, said commissioners shall execute and file with the clerk of this court, bond with good security, to be approved by him, in the penalty of $10,000.00, conditioned according to law. And they shall report their proceedings to this court at its next term.

"The modifications hereinbefore made in the reports of commissioner James Withrow, filed in these causes, renders a supplemental report necessary to final settlement of the matters involved in these causes, it is therefore ordered that said reports be recommitted to commissioner Withrow, with directions to re-state the accounts therein according to the principles and modifications set forth in this decree; that he take proof as to any debts against the estate of C. Hoke, deceased, which have not been confirmed and allowed in this decree, whether heretofore presented or not, but he shall allow no debt against said estate until it is proven by competent testimony, and the creditor, his agent or attorney, shall have made and filed an affidavit that no part of the debt so proven has been paid, or is subject to any legal set-off; that he shall re-state the legatee account, and report any debts that

may be liens on the real estate of C. Hoke, Jr., not heretofore reported; that he shall ascertain and report what was the value of the growing crop on the lands devised to John M. Hoke at the death of the testator, and shall report specially any matter deemed pertinent by himself, or required by any party to either of these suits. Before taking said accounts, he shall give written notice to the parties or their attorneys of the time and place of taking the same; and he shall report to this court at its next term."

From the said decree of the 21st day of November, 1874, and all decrees rendered in this cause, prior to the date last aforesaid and subsequent to the 14th day of October, which were not made or entered by consent of C. Hoke, the said C. Hoke upon his petition with assignment of error obtained an appeal to this Court, and it is for this Court to determine whether there is error in said decrees, or any of them, for which they should be reversed.

The first error assigned by the appellant in his said petition, is as follows, viz:

" By the 5th clause of the will of said Christopher Hoke, deceased, he gave to his two sons, Christopher Hoke, Jr., (your petitioner), and Anderson R. Hoke, certain lands therein described. During the life-time of the testator, the said A. R. Hoke departed this life without child or children, never having been married, and the question arose upon the pleadings in the cause whether a moiety of that devise lapsed or passed to your petitioner as sole devisee living at the time of the death of the testator.

" This was the rule at common law, and this rule, as your petitioner is advised, has never been changed by the Legislature. The court below, however, held that by analogy to the other cases in which the Legislature had interfered, it would hold the devise to be lapsed and passed under the residuary clause of the will to the residuary devisees, and A. R. Hoke being one of these devisees, the testator as to his part died intestate.

"Your petitioner is advised and charges that this holding is not sustained by the law.

The following facts are agreed in this cause, viz:

"1st. That Anderson R. Hoke died a year or more before his father. C. Hoke, the testator.

"That Christopher Hoke and Anderson R. Hoke, mentioned in the 5th clause of Christopher Hoke's will, were at the date of the will bachelors, and so continued until Anderson's death, and Christopher remained a bachelor until his father's death.

"3d. That all the other children of the testator, C. Hoke, were married and had children at the date of the will.

"4th. That the testator, C. Hoke, was administrator of the estate of Anderson R. Hoke.

"5th. That Christopher and Anderson seemed to be thrifty men.

"SNYDER & DENNIS,
For Defendants.
"DAVIS, PRICE, P. Q.

"November 4, 1873."

The will of Christopher Hoke, deceased, the construction of portions of which is involved in this suit, was made before the formation of this State, and was probated after the death of the testator, while the provisions of the Code of Virginia of 1860 in relation to the matters involved in the construction of said will were in force among us. The testator died in May, 1863. The will seems to have been made on the 28th day of August, 1857. The same statutory provisions were in force among us at the time the will was made, as at the death of the testator and the probate of his said will, and continued in force till the Code of this State took effect, 1st April, 1869, and I believe the same provisions are contained in the last named Code, and are still in force. In order to arrive at a correct conclusion as to the proper construction of said 5th clause of said will, it is necessary and proper to first ascertain the statute law bearing

Syllabus 1.

upon the question involved, and having done this, it will
be necessary to ascertain what the common law was upon
the subject before the statutes, and then how far the statutes have modified or changed the common law. The 18th and 19th sections of chapter 116 of the Code of Virginia of 1860, which are contained in the Code of 1849, are as follows, viz :

"18. When any joint-tenant shall die, whether the estate be real or personal, or whether partition could have been compelled or not, his part shall descend to his heirs, or pass by devise or go to his personal representative, subject to debts, curtesy, dower or distribution, as if he had been a tenant in common. And if hereafter an estate of inheritance be conveyed or devised to a husband and his wife, one moiety of such estate shall, on the death of either, descend to his or her heirs, subject to debts, curtesy or dower, as the case may be.

"19. The preceding section shall not apply to any estate which joint-tenants have as executors or trustees nor to an estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the other. Neither shall it affect the mode of proceeding on any joint judgment or decree in favor of, or on any contract with two or more, one of whom dies."

The 13th and 14th section of chapter 122 of the Code of 1860, which are also contained in said Code of 1849, are as follows, viz :

" 13. If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done, if he had survived the testator, unless a different disposition thereof be made or required by the will.

" 14. Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be

1878.
Special Term.
————————
Hoke, ex'or, &c.
v.
Hoke et al.

void or otherwise incapable of taking effect, shall be included in the residuary devise (if any) contained in such will."

The 1st section of chapter 124 of the Code of 1860, provides that "tenants in common, joint-tenants and co-parceners shall be compellable to make partition, and the court of equity of the county or corporation wherein the estate, or any part thereof, may be, shall have jurisdiction in cases of partition," &c. See 1 Revised Code of 1819, chapter 98 and sections 1 and 2, and section 18 of chapter 116 of the Code of 1860, and section 1 of chapter 124 of same Code. The devise to Christopher Hoke and Anderson R. Hoke by the 5th clause of said will was a devise to them *jointly* in express words, or in other words, it was a devise to them as joint-tenants. By the common law "when two or more persons are seized of a joint-estate of inheritance, for their own lives, or *per auter vie*, or are jointly possessed of any chattel interest the entire tenancy upon the decease of any of them remains to the survivors, and at length to the last survivor; and he shall be entitled to the whole estate, whatever it be, whether an inheritance or common free-hold only, or even a less estate." 1st vol. Tucker's Commentaries on Blackstone of 1836, book 2, p. 172. The object of the said 18th section of chapter 116 of Code of 1860, was to abolish survivorship among joint-tenants, whose estates in joint-tenancy were vested. The object of the 19th section of same chapter, was manifestly to qualify the operation and effect of said section 18. By the common law, "all the joint-tenants might agree to make partition of the lands, yet one of them could not compel the others to do so." 1st vol. Tucker's Commentaries book 2, 174. The statute law authorizing a joint-tenant to compel partition of the lands also operated a change of the common law as to the right to compel partition. By the common law, unless the will order it otherwise: 1. Where a testamentary gift of either real or personal estate is made to several as tenants in common, whether mention-

ed by name or described as a class, if designated so as

to be capable of definitive ascertainment, either at the date of the will, or upon an event which may and does happen before the period appointed for vesting, the death of some of them before it has vested, whether in the testator's life-time or after his decease, occasions a lapse of so much as would, in the opposite event have become theirs. 2. Where devisees or legatees are constituted joint-tenants, such of them as survive are, in similar circumstances entitled to the whole. 3. Where a clause or bequest is to a class as such, of which the members are unascertainable, indeterminate and contingent, until the period of vesting, if when that period arrives, there be living any persons, or a single person, answering the description, to them or him, as alone constituting the class, the entire subject is deemed to be given. In any particular the effect is the same, as if such persons or person and none other, had been expressly nominated to take it." William Green's Exposition Wythe's R. 361, 362, 363, and the many cases there cited in notes; vol. 3 Lomax Dig. 185. The 18th section of chapter 116 of the Code of 1860, does not alter or change the common law rule above stated. As we have seen where the devise of real estate is to a plurality of devisees or legatees jointly, and one of them dies before the testator, his share will not lapse, but ordinarily, the devise shall enure to the surviving devisees, except where the will otherwise directs, and except as hereinafter qualified. 2d ed. of Minor's Institutes, vol. 2 p. 947. William Green's Exposition, Wythe's R. p. 361, &c., and authorities cited in notes. 3d vol. of Lomax Digest, 2d ed. page 186, note 2 ; 2d vol Lomax on Executors, 2d ed. page 106, note 2. In the case of *Frazier, &c.* v. *Frazier's ex'or, &c.,* 2 Leigh 648, it might be understood from the syllabus and statement of the case by the reporter, that the devise of James Frazier by his will to four of the children of his brother Samuel, who was dead, was a devise to them in joint-tenancy, but it will

be seen by reference to the opinion of the court delivered by Judge Green that the devise to said four children was a devise to them as tenants in common. It would seem that the manner this case is reported may have misled Judge Tucker into the views expressed by him on the subject in the 1st vol., 2d book of his Commontaries, published in 1836, page 298, as he cites that case as supporting his views. The 19th section of said chapter 116 of the Code of 1860 does not alter or change the said last named common law rule. Lomax on Executors, 2d vol., 2d ed., page 106, note 2; 3d vol. Lomax Digest 3d ed., page 186, note 2; Wythe's Reports 361, &c. and notes. The said 19th section of said chapter 116 is manifestly simply a qualification or restriction upon the terms of the 18th section, and from its terms was not intended to have a further operation. And as before remarked the 18th section clearly applies when the estates in joint-tenancy are vested in joint-tenants, and was intended to abolish the common law rule of survivorship in such cases. In the case at bar the will of the testator had not taken effect at the death of Anderson R. Hoke, the testator being then alive. If Anderson R. Hoke had survived the testator he and his brother Christopher Hoke would, on the death of the testator, have been vested by operation of the will of their father and the law with the fee simple title as joint-tenants in and to the lands devised to them jointly by the said 5th clause of said will. But as said Anderson R. Hoke died before the testator he never took any estate in said lands under said 5th clause of said will. The will did not become operative until the death of the testator.

I will now proceed to consider the effect of the 13th section of chapter 122 of the Code of 1860. In Virginia, an act was passed in January, 1813, to prevent devises and bequests to the testator's child, or descendant, from lapsing in consequence of the death ot such devisee or legatee in the testator's life-time, testate or intestate, leaving a child, or descendant. In which event, the

estate so devised or bequeathed, it was enacted, should descend and pass to the heirs, devisees, distributees, legatees or legal personal representatives, as the case might be, of such devisee or legatee, in like manner to all intents and purposes in law and equity, and subject to like debts, charges, liabilities and conditions in all respects, as if such devisee or legatee had survived such testator, and had then died intestate. In place of the foregoing provision, the Code of 1819, chapter 104, §5, substituted the following enactment: "Whensoever any estate of any kind shall or may be devised or bequeathed by the testament and last will of any testator to any person being a child or descendant of such testator, and such devisee or legatee, shall during the life-time of such testator, die intestate, leaving a child, or children, or any one or more descendants of a child, or children, who shall survive such testator, in that case such devise or legacy, to such person so situated as above mentioned, and dying in the life-time of the testator, shall not lapse ; but the estate so devised or bequeathed, shall vest in such child or children, descendant, or descendants, of such legatee or devisee in the same manner as if such legatee or devisee survived the testator, and had died unmarried and intestate." Since the 1st of July, 1850, the said 13th section of chapter 122 of the Code of 1860, has in the Codes of Virginia and West Virginia, stood in the place of the foregoing provisions, said 13th section of chapter 122 being inserted in the Code of 1849, (which took effect the 1st of July, 1850) in lieu of the 5th section of chapter 104 in the revised Code of 1819. Mr. Jarman seems to think, that the provisions in the the 32d and 33d sections of the late Wills act, in England, which are to some extent similar to said 13th section of chapter 122 of the Code of 1860, do not apply where the devise or bequest is made expressly contingent on the devisee or legatee surviving the testator. For to let in the issue of such devisee or legatee as entitled to the devise or legacy, would be in direct opposi-

tion to the language of the will. Nor does the said Wills act, as Mr. Jarman suggests, touch the case of a gift to one of several persons as joint-tenants; for as the share of any object in the testator's life-time would survive to the other, or others, such event occasions no *lapse*, to prevent which is the avowed object of the said 32d and 33d sections of the English statute. 2d ed. Jarman on Wills, 1 vol., side page 313.

It seems to me, that said 13th section of chapter 122 of the Code of Virginia, 1860, was intended to have and operate a broader purpose than the mere prevention of the lapsing of legacies. True, it was intended to prevent the lapsing of legacies in certain cases, but in my judgment, it was intended in part to modify the said common law rule, so that if a devise is to two persons jointly, one of the devisees or legatees dies before the testator, leaving issue who survive the testator, such issue of the pre-deceased devisee or legatee, shall take the estate as that devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will. Lomax on Ex'ors, 2d ed., vol. 2, p. 108, note 2; Wythe's R. 364, 365, notes 15 and 17. Upon this subject and in support of the construction here given to said 13th section of chapter 122 of the Code of Virginia, I adopt the language and reasoning of Mr. Lomax in his valuable work on Executors, 2d ed. p. 108, note 2.

" The language in both sections 32 and 33 of the statute of Victoria, in case of the devisee dying in the testator's life, leaving issue that is alive at the testator's death, is, that such devise or bequest shall not lapse, but shall take effect as if the death of such person (the devisee or legatee) had happened immediately after the death of the testator, unless a contrary intention shall appear by the will. It will be observed in comparing the clause which has been cited in the Virginia statute with the two clauses of the English statute which have been referred to, the language in the latter, in both instances, is, that

the devise or bequest 'shall not lapse, but shall take effect,' &c.

"In the Virginia statute, these words are omitted, and there is no purpose expressed to prevent a lapse, nor any reference to the doctrine of lapse. It accomplishes its end by a direct and positive [enactment, that the issue sh&ll take the estate devised or bequeathed, as the devisee or legatee would have done, had he survived the testator. It, in every such case, operates substantially, by making the issue the object of the devise or bequest. Supposing then, the case of a devise or bequest to a plurality of persons, and one of them dying in the testator's life-time, is not a case which prevents the right of survivorship, under the Virginia statute, as to joint rights and obligations. The clause of the statute of wills now under consideration, presents a question wholly different from the matters relating to survivorship. The issue of the pre-deceased joint-tenant will take the estate as that devisee or legatee would have done. By this statutory substitution, the issue becomes entitled to the estate. His title is the same as if the will had expressly given the estate to him substantially for the deceased devisee or legatee.

"It would seem therefore that the Virginia statute would apply to such cases, where the gift was made to joint-tenants, and one of them dies before the testator, that it would defeat the survivorship to the other joint-tenants, (supposing such survivorship still in such cases to exist in Virginia) and would vest the same interest in the issue, that the deceased joint-tenant would have taken. If so the case is directly within the operation of our statute, which Jarman considers is not touched by the clauses of the English statute."

If then there be a devise to two or more persons jointly and one of them dies before the testator, leaving issue who survive the testator his share will not in that event go to the surviving joint-tenant, but will by virtue of said 13th section of the Code of 1860 go to such issue of the pre-

deceased joint-tenant who survive the testator, and such issue will take the estate devised or bequeathed as the pre-deceased devisee or legatee would have done, if he had survived the testator, unless a different disposition thereof be made or required by the will. But if such pre-deceased devisee or legatee die without issue living at the death of the testator then the devise shall by the common law enure to the surviving devisee or devisees legatee or legatees unless the common law in this respect is altered or changed by the provisions of the said 14th section of said chapter 122 of the Code of 1860, which it seems to me is not the case and was not intended so to operate. I have not been able to find any author or decision which claims that the said 14th section of said chapter 122 touches the case of a devise to one of a plurality of persons jointly. This section was enacted in the Code of Virginia of 1849, for the first time in Virginia, and so far as I am advised there has not as yet been a judicial interpretation thereof by the Supreme Court of that State. But it seems to me that its chief object was to modify the doctrine of lapse, and substitute residuary legatees for the heirs of the testator where there is a residuary devise. It may be that it has a greater effect in some cases than the substituting the residuary devisee for the heir in order to prevent intestacy, though probably the immediate design may not be the full scope of the clause. See 1st Jarman on Wills, side page 310. But as before remarked it seems to me that it does not touch the case of a devise of lands to one of a plurality of persons jointly, because of the death of one of such devisees before the testator, the devise does not fail and is not void or otherwise incapable of taking effect, but does enure to the benefit of the surviving devisees or devisee, legatees or legatee, by the common law.

For the foregoing reasons, I am of opinion that the appellant's said first exception is well grounded, and that under and by virtue of the said 5th clause of the

said will of Christopher Hoke, deceased, the said Anderson R. Hoke, one of the devisees therein having died before the testator Christopher Hoke, without leaving issue, upon the death of said testator, the said 5th clause in said will enured exclusively to the benefit of the surviving devisee Christopher Hoke, the appellant, and passed to him the legal title in severalty to the lands devised to the said Anderson R. Hoke and Christopher Hoke jointly, in and by the said 5th clause of the said will, subject of course to all proper charges, &c.

1878.
Special Term.

Hoke, ex'or, &c.
v.
Hoke et al.

And therefore, I am further of opinion that the circuit court erred in its decree rendered in this cause on the 26th day ot November, 1873, in so far as it adjudged, ordered and decreed, therein, "that by the death of Anderson R. Hoke without children or descendants in the life-time of the testator, the devise to him in the 5th clause of the will of C. Hoke, deceased, lapsed and did not go to C. Hoke, Jr., as the surviving devisee, but that C. Hoke, Jr., took only one undivided half of the entire devise under said 5th clause, and the other half passed to the residuary legatees in the 10th clause of the will, except the part of Anderson R. Hoke, who was also named as one of the residuary legatees which passed to the heirs generally of the testator, including said residuary legatees as a part of said heirs."

I am further of opinion from all the facts and circumstances that the court did not err in its said last named decree in its opinion therein stated, that "the testator in the 8th clause of said will, used the terms fifty-one acres of land," &c., as descriptive of the tract or parcel of land sold, and not · as a designation of the exact quantity of acres sold·; and that it was not the intention of the testator if the said tract did not actually contain fifty-one acres to make up the deficiency in quantity from the adjoining lands, which had been specifically devised to John M. Hoke in the 6th clause of said will, but not having before it sufficient evidence to determine with certainty that the fifty-one acres heretofore sold in this suit to

Joseph Coffman embrace, as said John M. Hoke claims, part of the lands devised to him in the said 6th clause the court doth refer the matter to commissioner James Withrow, who is directed to ascertain and report what portion, if any, of the said fifty-one acres sold to Joseph Coffman as aforesaid is included in the devise to John M. Hoke in the 6th clause of said will, the number of acres and the value thereof, both in relation to the other part of said fifty-one acres sold to Coffman and to the remaining lands of the said John M. Hoke, and if said commissioner deems it necessary, or if required by either party, he is authorized to employ a surveyor to survey said lands, and also to examine witnesses in relation thereto; but he shall return with his report all the evidence before him upon this enquiry without passing *seriatim* upon the numerous exceptions of the plaintiffs and defendants to the report of commissioner Withrow." The second assignment of error is therefore not well taken and is overruled.

The circuit court being further of opinion, as expressed in said last named decree that the said report should be re-committed, gave eight instructions to the commissioner which are contained in said decree as disposing of the material questions raised by the exceptions to said report. The said instructions are numbered respectively in the decree from one to eight inclusive. From the facts and evidence in the cause and the peculiar circumstances appearing therein which are too numerous to incorporate into this opinion, I am of opinion that said instructions so far as they go are substantially correct; unless it be the seventh instruction and the clause of the decree at the close of the eighth instruction in these words: " In all respects wherein said report of commissioner Withrow is not changed, modified and corrected in the foregoing direction, the same is approved, and all exceptions thereto by both plaintiffs and defendants inconsistent with said report so modified and corrected, are overruled; and so far

as they are consistent therewith are sustained," which will be noticed and substantially considered herein in reviewing the decree rendered in the cause on the 21st day of November, 1874.

1878.
Special Term.
Hoke, ex'or,'&c·
v.
Hoke et al.

But I am of opinion, as the lands which were devised in the said 5th clause, in said will to Anderson R. Hoke and Christopher Hoke, jointly, upon the death of the testator passed under said will to the said Christopher Hoke (the plaintiff) by survivorship, for the reasons hereinbefore stated, that the court erred in directing the said commissioner, "that in taking said legatee accounts, he shall charge C. Hoke, Jr., with 26.72 of the rents and profits of the estate devised in the 5th clause of the will of C. Hoke, Sr., and such damages as he may have committed in regard thereto since the death of the testator, subject to all proper credits against said rents, profits and damages, for taxes and permanent improvments, subquent to the death of C. Hoke, Sr." This last named portion of said decree is erroneous, as said lands devised by said 5th clause of said will to said Anderson R. Hoke and Christopher Hoke, jointly, passed at the death of the testator to said Christopher Hoke, under and by virtue of said will as hereinbefore ascertained. I do not think the circuit court erred in its said decree of the 26th of November, 1873, in sustaining so much of the defendant's exceptions to the depositions of Christopher Hoke, as relates to conversations had personally with the testator C. Hoke, deceased, and in overruling the plaintiff's exceptions to the depositions of William Campbell and others, before Alexander Walker, at his office in Lewisburg on the 12th, 13th and 14th days of March, 1873. The third error assigned by the appellant in his said petition, is as follows :

"By reference to the report of commissioner Withrow who was directed to take and report an account of the administration of your petitioner upon the estate of his testator, with the exceptions thereto, it will be seen that your petitioner had a large account against the estate for

1878.
Special Term.
———————
Hoke, ex'or, &c.
v.
Hoke et al.

improvements made, money advanced, services rendered, &c., which the commissioner compromised by setting off against it the rents of the mill which accrued before the death of the testator. The evidence showed that these ients had been settled with the testator just before his death, and showed your petitioner's account to be just, and ought to be allowed."

Commissioner Withrow in his supplemental report to the court, dated at the commencement thereof, April 10, 1874, in the list of debts reported by him as due from Christopher Hoke, Sr., deceased, to the plaintiff (C. Hoke, Jr.,) in his own right allows the plaintiff, in his own right a debt of $3,393.20, and interest thereon $121.57, as of June 1, 1874. (See last printed record in this cause p. 150). And the same commissioner in his report made to the court, which is mentioned and considered in the said decree of the court, rendered on the 26th day of November, 1873, shows the items of which said sum of $3,393.20 is composed as allowed by him to Christopher Hoke, Jr., (the plaintiff). And the last named amount he ascertained to exist on the 25th of October, 1873. (See last printed record pp. 30, 31 and 32). The same commissioner in the report last mentioned, at pages 32 and 33 of same printed record makes what is called therein an "alternate statement" of claims of said C. Hoke, (the plaintiff) against C. Hoke, Sr., deceased, and of credits. The last named claims of C. Hoke, (the plaintiff) against his father seem to be contained in accounts A. No. 62, B. No. 63, C. No. 67, D. No. 64, and Y. No. 66.

These last named accounts of C. Hoke, Jr., claimed by him against his father's estate before the commissioner, and in this cause, as I understand the report, are not embraced in, and do not compose any part of the said sum of $3,393.20 which the said commissioner ascertained to be due to C. Hoke, Jr., (plaintiff), in his own right, on the 25th of October, 1873. And the commissioner in his report, does not report any amount as being due

said C. Hoke, Jr., upon his said accounts, embraced in said "alternate statement." The court, in its said decree of the 26th of November, 1873, in the seventh instruction to the commissioner hereinbefore referred to, says: "In regard to the building of the Crigler house, the mill-dam, powder mill, repairing mill, &c., the court concurs with the commissioner in his first statement, and holds that the same should be setoff against the rents of the mill, accruing prior to the death of the testator, and that no balance should be allowed either way." I do not understand the court by this instruction to mean that the said sum of $3,393.20, reported by the commissioner in favor of said C. Hoke, Jr., as of the 25th day of October, 1873, was not due said C. Hoke, Jr., and should not be allowed him, but the contrary, as said $3,393.20 is the amount allowed by the commissioner in his first statement of the amount due said C. Hoke, Jr., and immediately preceding said "alternate statement." I do however understand the court by said seventh instruction, to mean that the court approved the action of the commissioner in refusing to allow the said C. Hoke, Jr., any amount as being due him from C. Hoke, Sr., deceased, on account of the said accounts of C. Hoke Jr., embraced in said "alternate statement" of the commissioner. As will be seen, the court in its said decree, rendered on the 21st day of November, 1874, ascertains and determines that the estate of the said testator, Christopher Hoke, deceased, is indebted to the plaintiff, (Chrispher Hoke), in his own right, in the said sum of $3,393.20 principal, and $121.59 interest, as of June 1, 1874, confirming the last report of the commissioner in allowing the same.

After a careful examination and review of all the evidence, facts and circumstances appearing in the cause, proper to be considered, touching the matters involved in considering the appellant's said third assignment of error, I do not feel satisfied that the circuit court erred in its said seventh instruction to its commissioner con-.

tained in its said decree of November 26, 1873; or that the commissioner or court erred in refusing to allow the appellant any amount or sum as being due or owing to him upon any of his said accounts embraced in said "alternate statement" of said commissioner Withrow. But the court correctly and properly ascertained and determined in its said decree of the 21st day of November, 1874, that the estate of the testator, Christopher Hoke, deceased, is indebted "to the plaintiff, Christopher Hoke in his own right in the sum of $3,393.20 principal, and $121.59 interest as of the 1st of June, 1874. I have not thought it proper to give here an analysis of the evidence, &c., upon which I have arrived at my said conclusions in reference to the matters involved in said third assignment of error, for to do so, would, in my judgment, extend this already long opinion unreasonably and unnecessarily. I am of opinion that the appellant's said third assignment of error is not well taken, and it is therefore overruled.

*As to the appellant's fourth assignment of error contained in his printed brief or argument filed in the cause, and which is not set out specifically in his petition.* It seems to me from the evidence and facts in the cause, that the circuit court did not err in holding the executor, Christopher Hoke, Jr., chargeable for the whole of the assets which are properly chargeable to an executor in this case, without charging jointly with him therefor his co-executor, Fleshman, deceased. It may become proper hereafter on proper proceedings for the purpose, to proceed against the estate of Fleshman, deceased, as one of the sureties of executor Hoke, Jr., as to this however, I do not now determine, as the question is not properly before us. One question sought to be raised under this fourth exception is, whether the executor, C. Hoke, Jr., should be credited in the settlement of his executorial accounts, with several judgments on bonds given for personal property sold at the executorial sale, after the death of the testator, the most prominent among which

are the several judgments in favor of executor Hoke, Jr., v. John M. Hoke and Henry Hoke. Executor Hoke, Jr., in his deposition, taken in this cause, in answer to question thirty therein, is asked by his counsel this question, viz: " Tell whether or not you believed at the time you took the bond, John M. Hoke or Henry Hoke, to be good and sufficient of estate for the amount of the bond for said property?" to which he answered: "I thought so." (See last printed record, p. 89). Taking said question and answer together, I understand said executor Hoke, Jr., in effect to admit that he did take said bonds. And in addition to this, it would seem that Fleshman was security in the bond of Henry Hoke. Henry Hoke, the brother of executor Hoke, the plaintiff below and appellant, was the security of John M. Hoke in said bond called the bond of John M. Hoke. Executor Hoke seems to have been the principal acting executor, though his co-executor, Fleshman, gave some attention to a part of it, but it appears that after the death of said Fleshman, all moneys, bonds, &c., received by him, were shortly after his death turned into the hands of executor Hoke, and he took charge of the same. Said Fleshman died not very long after said executorial sale. But said two last named judgments are considered under the next assignment of error.

As to the fifth assignment of error of appellant in his printed brief, and also the sixth, which are to the effect that the court erred in refusing to allow executor Hoke, Jr., the debts due from John M. Hoke and Henry Hoke, for property of the testator purchased by them at the executorial sale. The debts embraced by these two assignments, are the judgments last above referred to. In the case of Estill & Eakle, et al., v. T. M. McClintic's adm'r, et al., reported in 11th West Va., page 339, this Court held that "where an administrator sells personal estate of his intestate, and takes bonds therefor, this is a conversion of the assets of the estate, and he becomes liable as administrator, to account for the amount

of sales, and the bonds become his individual property, but a court of equity will, when it is shown that he has acted with prudence, diligence and caution relieve him from this responsibilty if the bonds, without any fault on his part, prove unavailable; but otherwise will not. In the case of *Hart* v. *Ten Eyck* 2 Johns ch. 62, Chancellor Kent speaks of the defendants, as administrators and trustees, who by the nature of their undertaking were charged with the execution of disinterested and burdensome trusts: And he adds that he should always be extremely averse to hold such characters responsible on slight grounds, where there is evidence of fair and upright intention; but if the facts necessarily lead to the conclusion that they had been guilty of gross negligence or of premeditated and fraudulent concealments and dispositions of the trust funds, it would be his duty to animadvert upon such conduct with the freedom and severity due to truth and justice. In the case of *Powell* v. *Evans*, 5 Ves. 839, the master of the rolls says among other things, that he was greatly averse to charge executors, who intended fairly to discharge their duty; and that he was very cautious not to hold them liable upon slight grounds. In the case of *Elliott* v. *Carter et al.* 9 Gratt. 541, Judge Lee, at page 559, after citing the cases last above cited, says: "Many other cases and opinions of learned judges might be cited tending to the same conclusions; and the fair result of the views which they present and the reasoning they adopt is, that where a trustee has acted in good faith in the exercise of a fair discretion, and in the same manner in which he probably would have acted if the subject had been his own property and not held in trust, he ought not to be held responsible for any losses accruing in the management of the trust funds. In Virginia it is true, for the most part, some compensation is allowed to executors and other trustees for their services, yet I am not aware that any different or more stringent rule has been adopted, by which the measure of their responsibilities is

to be determined, than that which seems to prevail in the chancery of England and New York; and I very much doubt whether a wise policy should ever require more of a trustee than that he should act in good faith and with the same prudence and discretion that he is accustomed to exercise in the management of his own affairs." On page 560 of same book, the same learned judge says: "As at present advised therefore, I should not feel disposed to extend the responsibilities of trustees beyond the limits by which they would seem to be bounded in the cases to which I have referred; and where they have intended to discharge their duties fairly, I think they should be treated with tenderness, and due caution taken not to hold them liable upon slight or uncertain grounds, lest by a different policy, men of integrity and who would be actuated by the proper views, may be deterred from taking upon themselves an office so necessary in the concerns of life, from fear of the anxiety, trouble and risk which it involves."

Judge Lee, in said opinion, cites 2 Story's Eq. Jur. §1268 and §1272; *Ex parte* Belchier, Am. R. 219; *Knight* v. *Plymouth*, 3 Atk. 480; S. C. 1 Dickens 126; *Thompson* v. *Brown*, 4 John. Ch. 619, 628; *Wilkinson* v. *Stafford*, 1 Ves. Jr. 32; *Vez* v. *Emery*, 5 Ves. 141.

In the case of *Estill & Eckle* v. *McClintic et al.* before cited, Judge Green in delivering the opinion of the Court said: "It is true a court of equity under peculiar circumstances, will relieve a personal representative from responsibility for the full amount of a sale of the property which has come into his possession." In the case before us I do not think there appears to be ground on which to impute *mala fides* to executor, Hoke, in the sale of the property for which said debts were contracted and the taking of the bonds. From the evidence in the case, I conclude that the persons who became security on each of the bonds, were at the time solvent and good for the amount of each of the judgments. Suits were brought according to the proofs on each of the bonds as

soon as could be reasonably expected, under the peculiar circumstances and surroundings growing out of the war, considering the condition of the counties of Greenbrier and Monroe, in which the parties resided. The suits on the bonds were prosecuted with diligence by executor Hoke, and they were stubbornly defended, and recoveries on the lands resisted in the courts. At length however, the executor, Hoke, succeeded at comparatively a recent date, in securing said judgments. Executions were issued thereon, and returned " no property found." The executor, Hoke, brought suit against John M. and Henry Hoke on one of the bonds, in the circuit court of Monroe county, and the circuit court rendered judgment of dismissal in the cause at the plaintiff's cost, upon a demurrer filed by the defendants to pleadings in the cause, and the plaintiff in said cause took the same to the Supreme Court of Appeals, and that Court, at its August term, 1869, reversed the judgment of the circuit court, and remanded the cause to the circuit court for further proceedings; and subsequently the executor, Hoke, obtained judgment, but for greatly less than the face of the bond. The case is reported in 3 W. Va. 561. It seems to me on reviewing the authorities, that when an executor sells the personal property of his testator, in good faith, upon a reasonable credit, and takes from the purchaser bond with good personal security, and the debt is afterwards lost without the fault of the executor, by the parties to the bond being insolvent, the executor should not be required to sustain the loss. In such case the executor has done his duty; he has acted with prudence, and diligently discharged his duty ; there is no *mala fides,* and it would be inequitable to require the executor to pay the debt, and thereby compel him to lose it. For the loss in such case he is blameless, legally and morally, and should not, in a court of equity, be compelled to bear it.

The commissioner in his report says that from what he can see in the papers he is of opinion that the debts can be made out of the lands of the debtors, but that they

are not now *available*. From what appears in the papers of the cause it is be no means clear to my mind that said debts can by made out of the lands of the debtors, or if at all in any reasonable time. And if the debts should be lost in whole or part, I do not think it would be equitable or just under the peculiar circumstances appearing in this cause that said Hoke should bear the loss, or if the debts may possibly be made in whole or part out of lands of the debtors by a chancery proceeding for that purpose, I think it would be inequitable in this case to require the executor Hoke to pay the amount of the said debts now out of of his own funds as though he was guilty of a *devastavit*, and compel him to incur the uncertainty of reimbursement out of lands of the debtors. The lands devised to some of the judgment debtors may be required to contribute to the payment of the debts of the testator which the personalty is insufficient to satisfy and there may be liens and incumbrances upon it of a different character prior and paramount. Under all the circumstances of the case appearing in the record it seems to me that the circuit court erred in its said decree of 21st November, 1874, in sustaining so much of the defendant's second exception filed to commissioner Withrow's report as relates to vouchers Nos. 112 and 113 and decreeing personally against said Christopher Hoke for the amount of said judgments. To my mind and in my judgment the court erred in decreeing against executor Hoke, personally for the amount of said judgments instead of crediting him therefor as is done by the commissioner in his report. See last printed record page 142.

The court therefore erred in said last named decree in so far as it decreed that James W. Davis and A. C. Snyder who were appointed special receivers in the cause, recover from the plaintiff, as executor of C. Hoke, deceased, *de bonis propriis*, the sum of $2,569.23. I think under the circumstances the executor, Hoke, should be credited in the settlement of his executorial account

with the amount of said two judgments and interest and costs as was done by commissioner Withrow, and the court should decree that the estate of the testator is entitled to the benefits of said judgments and the liens thereof, respectively, and the bonds or notes on which they are founded and the proceeds thereof; and in the future treat, in all respects said judgments and the bonds on which they were rendered as unadministered personal assets of the testator, under its control and direction, and should control and direct the collection of the same, and control and direct the application and disposition of the proceeds thereof when and as the proceeds are realized. This the court may do by special receivers or otherwise as may be proper and the court may make all orders and decrees necessary and proper to be made to expedite and insure the collection of said debts. But the last named decree as to the recovery by the special receivers seems to be conditional and dependant upon their executing bond with good personal security in the penalty named in the decree as to all the recoveries decreed in favor of the receivers in that clause or part of the decree. Perhaps a decree in this form might be held good, but it seems to me it is not altogether regular. The court should in its decrees to enforce the collection of said debts seek as far as possible in making decrees or orders in relation thereto not to release subsisting liens against the lands of the judgment debtors. However this is a matter about which the court must exercise a sound discretion from the facts before it. I think it is competent for the court to decree that said John M. and Henry Hoke, respectively pay to the receiver or receivers the amount of each of said judgment debts, (including interest and costs at law), against them, but whether it is expedient and proper in this particular case to do so, the circuit court will determine when the cause returns to it for further proceedings, from such facts and circumstances as may then be before it. The decree also ascertains that there is in the hands of com-

missioners Davis and Dennis, to the credit of "this suit," $1,868.01; as of the date of the decree, and directs said commissioners to pay the said special receiver the said sum of $1,868.01, and that the said receiver, out of the said sum, shall pay to John M. Hoke $881.16, with interest, &c. It should have been provided in the decree substantially that the said special receivers should not receive any money under the decree, until they executed, either before the court or its clerk, bond with good personal security in the penalty prescribed by the court. No provision of this kind is contained in this decree. This omission is irregular and dangerous in practice. In directing the sale, the court did not direct that the deferred installments should bear interest. This omission is not common in such cases.

*As to appellant's seventh assignment of error, in his counsel's said brief in relation to the court by its last named decree, not crediting the appellant with the debt on Ed. J. Nickell,* I deem it sufficient to say, that I do not perceive error in said decree in this respect, regarding the Nickell debt as occupying a different position under the proofs and facts of the case, from that of the said two Hoke debts, for which judgments were obtained.

*As to the appellant's eighth assignment of error, contained in his counsel's brief in relation to the court, refusing to allow the appellant credit for certain taxes paid by him on lands therein mentioned.* I see no error in the decrees in this respect, as the case now stands.

*As to the appellant's ninth assignment of error in his counsel's said brief, in relation to the court refusing to suppress the depositions of D. S. Hern and others.* This alleged error has been hereinbefore disposed of, and held not to be well taken.

*As to the appellant's tenth and fourteenth assignments of error in said brief, in relation to the court directing the commissioner to take an account of the damages committed by C. Hoke on the property devised by the fifth clause of the will of the testator, and of the rents and profits thereof,*

since the death of the testator. These two assignments of error have been hereinbefore considered and substantially sustained for reasons stated. The lands claimed by the said fifth clause of the will, having passed to the said Christopher Hoke, he should not be held liable for such damages, and rents and profits.

As to the appellant's eleventh assignment of error contained in said brief, in relation to the court directing that the $881.16 found due to John M. Hoke, should be paid by the receivers to him. It seems to me that in so far as said decree directs said sum of $881.16 to be paid by the special receivers appointed by the decree to John M. Hoke, it is premature and erroneous. This fund belonging to John M. Hoke, is the proceeds of sale of twenty-one acres of land devised to him by the testator, as has been before seen, and should have been retained by the court under its control, until it is seen whether it will be needed for the payment of any part of the debts of the testator, and if it should not be so needed, then the court may make such disposition of it as may to them appear proper.

As to the appellant's twelfth assignment of error in said brief, that the court erred in decreeing against executor Hoke DE BONIS PROPRIIS for the said sum of $2,569.23. I have already ascertained that said decree was erroneous in that respect.

As to appellant's thirteenth assignment of error in said brief in relation to the item of $106.69, for certain costs mentioned in executor Hoke's eleventh exception filed to commissioner Withrow's last report, which exception the court sustained in its decree of November 21, 1874. The court having sustained said exception should have given said executor credit therefor by deducting the amount thereof from the said sum of $1,048.87, or in other words the court should have given the executor credit therefor and decreed for the balance with proper interest, which it failed to do. I am not satisfied that the court erred in sustaining said eleventh exception and therefore do not feel authorized to interfere with the ruling of the

circuit court in that respect. The appellant's fifteenth assignment of error in said brief was abandoned by the appellant, and I deem it unnecessary to say more about it, as I do not see that it can be productive of any harm to the appellant and no other person complains of it, though I do not see what bearing it has on the case.

As to the appellant's sixteenth assignment of error in said brief in relation to the court and the commissioner Withrow charging him with the item of $3,301.84 for the property *appraised by the appraisers of the estate. See commissioner Withrow's report in last printed record pages* 23 *and* 140. The action of the commissioner and the court in this respect was in pursuance of the decree of the court rendered in the cause on the 16th day of October, 1871, which was affirmed by the Supreme Court of Appeals of this State, on the 14th day of October, 1872. This court will not now in this case reverse or set aside the said decision of the 16th day of October, 1871, affirmed as aforesaid.

*As to the appellant's seventeenth assignment of error in said brief in relation to the court refusing to allow said executor for extra services.* The commissioner and court did, I think, correctly allow said executor his commissions and also $207.75 and $24.92 interest for extra expenses. See last printed record page 142. The court also allowed considerable sums for the executor's attorneys and counsel in the last decree. The ordinary commission allowed an administrator or executor is five per cent, but under peculiar circumstances a larger commission may be allowed. *Estill & Eakle et al.* v. *McClintic's adm'r et al.,* 11 W. Va. 339. I do not feel authorized to say under the circumstances that the court erred in not allowing the executor any greater amount than it did in this case, for extra services. I think upon the whole that the court allowed commissions sufficient for services as executor.

*As to the appellant's eighteenth assignment of error in said brief, as to the court overruling exceptions to the deposition of Wiley Keinbrough, filed by the said executor.*

Syllabus 4.

The objection made here to the reading of the said deposition is, that it was taken during the session of the circuit court of Greenbrier county, and also, that the questions propounded are leading. As this deposition relates in all material respects, to the $1,000.00 bond of the testator, made to plaintiff, C. Hoke, Jr., and the commissioner and the court allowed the same, and it is allowed here to said Hoke, Jr., and said deposition is in effect thereby overruled, this alleged error, if it was error, has become immaterial, and it is therefore unnecessary for me to now express an opinion further about it, and I therefore do not do so.

Under the views hereinbefore stated, in relation to the effect of the said 5th clause of the will of the testator, it was error in the commissioner, Withrow, to charge Christopher Hoke (the plaintiff), with $3,300.00 for eleven years rent of the mills and lands bequeathed to him and said A. R. Hoke, in the 5th clause of said will, from the death of the testator to June, 1874, or any part thereof, and therefore error in the commissioner to charge said Christopher Hoke with any part of said rents in the accounts made up by him between the executor and legatees of the testator; and the court erred in confirming said report in this respect. The court should have disallowed said rent wherever it is charged to said Christopher Hoke, in any statement or account of said commissioner, in any part of his report. But the court, by its decree of 21st of November, 1874, confirmed said report as to said rents. This was error in the court. From this it follows that the court erred in said last named decree, in so far as it ascertains that the plaintiff, C. Hoke, Jr., in his own right, is indebted to the other heirs of his testator for the use and occupation of 26.72 of the mill property, in the sum $1,088.96, as of June 1, 1874; and also erred in so far as it decreed, that the said receivers, James W. Davis and A. C. Snyder, recover from the said C. Hoke, in his own right the said sum of $1,088.96. The court in its

said last named decrees, erroneously ascertains, "that the lands mentioned and described in the 5th item of the will of C. Hoke, deceased, consisting of three tracts and known as the mill-property devised to Christopher and A. R. Hoke, are held in one equal and undivided interest by the said C. Hoke, and all the other heirs of the testator," and for this reason and that the personal assets of the testator will not be sufficient to pay the debts due from said estate, as I infer the creditors whose debts have been reported and confirmed in the "second of these causes are entitled to a sale of such of the real estate of the defendant, C. Hoke, in said second suit as will pay their debts and the *devastavit* of said C. Hoke in the first of these suits, and the court being of opinion that the said 'mill-property' should be first sold," decreed that J. W. Davis and A. C. Snyder, who were appointed special commissioners for the purpose to sell said mill-property, at public auction &c., "unless said debts are paid within thirty days," &c.

The part of said decree which directs the sale of said "mill-property," seems to have been made in part at least by the court in consequence of its erroneous construction of said 5th clause of said will hereinbefore stated, and because of the decree it made against the said executor, C. Hoke, *de bonis propriis* for the sum of $2,569.23. And it seems to me, that but for these facts said decree of sale would have been modified or different from what it was in material respects. I do not see why the land of the executor should have been decreed to be sold in this cause, to pay his "*devastavit*" whatever it was, as the cause then stood before the court. But I do not now definitely decide this question. So much of said decree of the 21st of November, 1874, as appoints commissioners to sell said mill-property, and directs said commissioners to sell it, must therefore be reversed, but when the case gets back to said circuit court for further proceedings and the circuit court has before it the action and views of this court, upon its decrees in this cause it

may make such decree or decrees of sale, in the cause first named, or secondly named, of the lands of the said Christopher Hoke, (the plaintiff,) in the said decree of the 21st of November, 1874, before mentioned as would be now proper under the opinion and decision of this court and further, according to the principles and practice of courts of equity. But perhaps no decree of sale of the realty ought to be made if it all, until the commissioner makes his report. Material parts of the record of the cause secondly named in said decree of the 21st of November, 1874, is not before us so far as I can see, and I do not mean to be understood as determining in this cause, or in this opinion that it may not be proper for the circuit court, after the return of this cause to it, to decree the sale of said "mill-property," or so much thereof as may be necessary for the purposes of that suit, or in the case before us for all proper purposes; such as contributing its proper proportion to the payment of the testator's debts, and such other purposes as may be proper according to the rules and practice of courts of equity in such cases. Under the circumstances, I do not consider that the appeal granted in this cause, should be applied or applies to so much of the said decree of the 26th November, 1873, as dismisses the cause of Henry Hoke and Virginia S. his wife et al., plaintiffs, vs. Christopher Hoke et al., defendants, and gives costs to the defendant, Christopher Hoke; or to so much of the decree of the 21st day of November, 1874, as applies to the cause of John Dunsmore, adm'r et al., plaintiffs, vs. Christopher Hoke et al., defendants, as is not reversed by this court in the decree which will be entered by it herein. The appellees, by their counsel, appeared in this cause, in this court as shown by the record of this court, and filed assignments of error to the decrees of the court which I have been considering; and these assignments of error are seven in number, and are contained in the printed brief of the counsel of appellees filed in this cause.

I will now pass to the consideration of these last named assignments of error.

The first of these errors assigned claims in effect that the court erred in not charging the said executor, Hoke, with the slaves sold and purchased by the appellant. The matters contained and involved in this assignment of error have already been considered and determined in this opinion as not constituting error in the court under the peculiar circumstances appearing in the cause. This assignment of error is therefore overruled.

The second assignment of error of appellees is substantially that the court erred in allowing fees to counsel of appellant as executor. I do not think this assignment of error is well taken. It seems to me that it was proper and prudent for the appellant to employ counsel in this cause which involved the construction of the testator's will and the sale and disposition of the testator's property for the payment of debts and legacies and the settlement of the whole estate. I think it was in this aspect to the interest of the estate that he should do so. The amount allowed by the court for counsel's fees seems to be reasonable and proper from the evidence, and it seems to have been proper to employ counsel. I do not think the court erred in sustaining the third exception of defendants below to the last report of commissioner Withrow to the extent of $300.00, part of the item of $1,040.00 and in reducing said item to $740.00 and in overruling the residue of said third exception. Said second assignment of error of appellees is therefore overruled.

The third assignment of error of appellees is, "that the amount decreed against the appellant for the use and occupation of the 'mill-property,' devised to Anderson R. Hoke, is much too small." For reasons hereinbefore stated, I have ascertained and determined that the appellant was not properly chargeable with any rent for the said mill-property after the death of the testator. This last assignment of error is therefore overruled.

1878.
Special Term.
Hoke, ex'or, &c.
v.
Hoke et al.

The fourth assignment of error of appellees is that, "the court erred in allowing the appellant in his own right the sum of $3,393.20, against the estate." I have hereinbefore ascertained and determined that the court properly made said allowance and therefore this fourth exception of appellees is overruled.

The fifth assignment of the appellees is, as to the allowance of $248.38 by the court for costs incurred in the Supreme Court of Appeals. I do not feel satisfied that the court erred in allowing the executor said costs under all the circumstances appearing in the cause, and therefore this exception of appellees is overruled.

The sixth error assigned by the appellees is, that the exception of the appellee, John M. Hoke, to the report of commissioner Withrow, in relation to the value of the twenty-one acres of land sold to Coffman should have been sustained.

From the evidence in the cause, being on the value of said twenty-one acres of land, I do not feel authorized to determine that the court erred in overruling said exception of John M. Hoke. It seems to me that from the evidence, the commissioner was authorized to fix the value at $40.00 per acre. From all the evidence, I think it clear, that the said twenty-one acres were worth $40.00 per acre, but as to whether it was more than that amount, the evidence is conflicting. The said sixth exception of appellees is overruled.

The seventh assignment of error of appellees is, that the court erred in not sustaining the exception of the legatee, Susan Hoke, as to the charge against her of $196.50. This charge is made against the said Susan Hoke by the commissioner, in the statement of her account as one of the testator's legatees, and purports to be for amount of property bought at sale, as ascertained by commissioner Walker, &c. There is also $59.30 of interest on said $196.50, charged to said Susan in said statement. See last report of commissioner, page 155. Commissioner Withrow, in his last report, at page 153

of printed record, states in a note: "It appears now from the representations of the executor, that the claim allowed as against the estate on the opposite page, marked 113, was a judgment against 'Mountain' Henry Hoke, who is the husband of Susan Hoke, and that it was for the property bought at the sale; and it will be seen that the property bought at the sale by Susan Hoke and her husband, Henry, was charged to said Susan in the legatee account, as principal, $196.50 and interest, $59.30. This being the case, it is manifest that it ought to be erased in one or the other place." The claim allowed against the estate of the testator, is the "amount of the Henry Hoke debt, as per execution returned 'no property found,' principal $293,47, interest $28.37, and costs, $40.59, voucher 113," charged to the testator's estate by the commissioner in his last report, at page 142 of last printed record, and is the same judgment against Henry Hoke mentioned in the said decree of 21st November, 1874, and hereinbefore referred to. It seems that Henry Hoke gave his bond with security for said property, purchased at said sale, and that the executor sued him and procured judgment against him therefor and costs; and the said judgment, which is in excess of the charge to said Susan, is still claimed in this cause against said Henry Hoke, and includes said charge to said Susan. I am of opinion, under the circumstances, that the circuit court did err in overruling said exception of said Susan Hoke, and that she should not now be charged in the legatee account with said $196.50, and interest. The court in its last decree, sustained the exception to the affidavit of C. Hoke, made on the 4th of June, 1874, and overruled all exceptions taken to the depositions by either party. I do not understand that the court by this ruling, set aside its rulings upon exceptions to depositions contained in the decree of the 26th of November, 1873, or principles therein settled. But I understand that the court meant thereby, in effect, to overrule the exceptions of each party to depositions

taken subsequent to that time.   The exceptions filed to depositions taken since 26th November, 1873, are numerous, and to consider them separately here, would require no inconsiderable space.   Doubtless, the court may have erred as to some of said last named exceptions, but not in fact to the prejudice of the appellant or appellees. I have examined all said depositions and exceptions, and in arriving at my conclusions in the cause, I have excluded from consideration all the depositions and parts of depositions which I think the circuit court should not have considered, and the conclusions to which I have arrived on the questions on which said depositions bear, are based upon what I regard as legal and proper evidence in the cause only, and these conclusions would not have been different if the circuit court had sustained such of said exceptions as perhaps ought to have been sustained.   I therefore regard the question as to whether the court erred in overruling all of said exceptions to depositions as immaterial.

In the said decree of the 21st day November, 1874, the court directs the special receivers to pay out of the sum of $1,868.01, to John M. Hoke the said sum of $881.16, with interest thereon from this date ; and out of the balance thereof, and the said sum of $2,569.23, they shall pay the costs of this suit and the debts thereinbefore decreed to Samuel Price and J. W. Davis ; and after paying said costs and debts in full they shall loan out any balance in their hands till the next term of this court; and that said receivers report their proceedings to this court.

I have hereinbefore ascertained that it was error in the court to direct the said special receiver to pay to John M. Hoke the $881.16 as in said decree directed, but that the court should have retained said last named amount under its control until a future period.   Having hereinbefore determined that the court erred in so far as it decreed that said special receivers recover from the plaintiff, as executor of C. Hoke, deceased, *de bonis*

*propriis*, the said sum of $2,569.23; when this cause returns to the said circuit court it should therefore provide in its decree hereafter to be made in the cause that said special receivers pay the costs of the suit and the said Price and Davis debts decreed to them out of any balance which may remain of the said sum of $1,868,01 and its accrued interest, if any should be properly chargeable after deducting therefrom the said sum of $881.16 and its interest, if any should be properly chargeable and all proper commissions, and out of the amount with which the plaintiff, C. Hoke as executor, is properly chargeable and any amount which may be realized from said debts against said John M. and Henry Hoke, respectively, the amount of which they were severally ordered to pay to said special receivers or to provide for the payment of said last named debts in some other proper way. Having hereinbefore determined that there are several material errors in said last named decree for which the same must be reversed in so far as there is error, it seems to me that in consequence of said errors and reversal, so much of the said last named decree as recommits the report of commissioner Withrow, made in this cause to him for a supplemental report, as directs the said commissioner Withrow to re-state the accounts therein, "according to the principles and modifications set forth in said decree is too broad, so far as it applies and relates to this case in so far as I have herein ascertained and determined these principles to be erroneous, and to that extent must be modified by this court in its decree herein.

I see no error in any of the decrees rendered in this cause after the 14th day of October, 1872, and prior to the 26th day of November, 1873, which are covered by the appeal allowed in this cause, and none have been suggested or assigned by counsel. I have considered all errors assigned in this cause, or suggested by counsel, and I see no material error in the said decrees of the 26th day of November, 1873 and the 21st day of No-

vember, 1874, other than those I have hereinbefore indicated so far as said last named decrees apply to the case before us for review by the appeal allowed in this cause.

For the foregoing reasons, parts of the said decrees of November 26, 1873, and the 21st day of November, 1874, must be reversed and the order of recommittal to commissioner Withrow contained in said decree of the 21st day of November, 1874, must be modified so far as it applies to this case in accordance with the views hereinbefore expressed in relation thereto.

The other Judges concurred.

### Substance of Decree to be Entered.

For reasons stated in the opinion in writing of this Court, filed with the papers of this cause, this Court is of opinion, that there is error in the decrees, and each of them rendered in this cause by the circuit court of the county of Greenbrier, on the 26th day of November, 1873 and the 21st day of November, 1874. It is therefore adjudged, ordered and decreed, that so much of the said decree of said circuit court, rendered on the 26th day of November, 1873, as adjudges, orders and decrees, "that by the death of Anderson R. Hoke, without children or descendants in the life-time of the testator, the devise to him in the 5th clause of the will of C. Hoke, deceased, lapsed and did not pass to C. Hoke, Jr., as the surviving devisee, but that C. Hoke, Jr., took only one undivided half of the entire devise under said 5th clause, and the other half passed to the residuary legatees, in the 10th clause of the will, except the part of Anderson R. Hoke, who was also named as one of the residuary legatees, which passed to the heirs general of the testator, including said residuary legatees as a part of said heirs," and also so much of said last named decree as directs, that "in taking said legatees accounts,

he (meaning the commissioner) shall charge C. Hoke, 1878.
Special Term.
Hoke, ex'or, &c.
v.
Hoke *et al.* Jr., with 26.72 of the rents and profits of the estate devised in the 5th clause of the will of C. Hoke, Sr., and such damages as he may have committed in regard thereto since the death of the testator, subject to all proper credits against said rents, profits and damages for taxes, and permanent improvements, subsequent to the death of C. Hoke, Sr.," and so much of said decree rendered in this cause on the 21st day of November, 1874, as sustains so much of the defendant's second exception to the report of commissioner, Withrow, as relates to vouchers Nos. 112 and 113, and determines that "the executor must be charged with the debts represented by said vouchers, Nos. 112 and 113," and so much of said last named decree as ascertains, that "the plaintiff as executor of C. Hoke, deceased, is indebted to the estate of his testator in the sum of $2,569.23, that being the aggregate of principal and interest of the item of $1,048.87, and the two judgments of $993.34, and $293.47, as of the 1st day of June, 1874," and "that the plaintiff, C. Hoke, in his own right is indebted to the other heirs of the testator for the use and occupation of 26.72 of the mill-property, in the sum of $1,088.96, as of June 1, 1874," and as adjudges, orders and decrees, "that James W. Davis and A. C. Snyder, who were made special receivers of the court in these causes, after having filed with the clerk of this court bond, with good security, in the penalty of $10,000.00, conditioned according to law do recover from the plaintiff, as executor of C. Hoke, deceased, *de bonis propriis*, the sum of $2,569.23, from the plaintiff, C. Hoke, in his own right, the sum of $1,088.96 ; from the defendant, John M. Hoke, the sum of $1.159.93, and from the defendant, Henry Hoke the sum of $362.43 with interest on each of said sums from the 1st day of June, 1874, till paid ; and that they be allowed to sue out executions in their names as such receivers, for each of said sums ; but if they succeed in collecting the whole or any part of the said sums therein decreed against

1878.
Special Term.
——————
Hoke, ex'or, &c.
v.
Hoke et al.

John M. and Henry Hoke, they shall credit the amount so collected, to the plaintiff on said $2,569.23. And it appearing from the report of commissioners Davis and .Dennis, filed in the first of these causes at that term, that there was in their hands, to the credit of this suit, $1,868.01, as of the date of the decree, of which $881.16 was due to the defendant, John M. Hoke, it was therefore further adjudged, ordered and decreed, that said commissioners Davis and Dennis, pay to the special receivers thereinbefore appointed, the said sum of $1,868.01, and that said receivers, out of said sum, should pay to John M. Hoke, the said sum of $881.16, with interest thereon from that date, and out of the balance thereof, and the said sum of $2,569.23, they should pay the costs of this suit, and the debts thereinbefore decreed to Samuel Price and J. W. Davis; and after paying said costs and debts in full, they should loan out any balance in their hands till the next term of that court; and that said receivers should report their proceedings to that court at its next term," and sustains the account stated by commissioner Withrow, charging the plaintiff, C. Hoke, with rent subsequent to the death of the testator, C. Hoke, deceased, for eleven years, or any other period of time, and charges the plaintiff, C. Hoke, with parts of such rent in the statements of said commissioner in the legatees' accounts or elsewhere therein, and ascertains " that the lands mentioned and described in the 5th item of the will of C. Hoke, deceased, consisting of three tracts, and known as the mill-property devised to Christopher and A. R. Hoke were held in one equal and undivided interest by the said C. Hoke, and all the other heirs of the testator; and that the personal assets of the estate of said C. Hoke, deceased, would not be sufficient to pay the debts due from said estate; and that the creditors whose debts had been reported and confirmed in the second of these causes, were entitled to a sale of so much of the real estate of the defendant, C. Hoke, in said second suit as would pay their debts and the *devastavit*

of said C. Hoke in the first of these suits ; and the court being of opinion that said 'mill-property' should be first sold, it was therefore adjudged, ordered and decreed, that J. W. Davis and A. C. Snyder, who were thereby appointed special commissioners for that purpose, unless said debts were paid within thirty days from that date, should sell said 'mill-property' at public auction in front of the Lewisburg hotel, in the town of Lewisburg, upon a credit of six, twelve and eighteen months, except so much in cash as would pay the costs in the second of these suits, and the expenses of sale, which should be cash—taking from the purchaser bond, with good security for the purchase money, and the title to be retained until said bonds were paid. Before making said sale, said commissioners should give notice of the time, terms and place of sale, by advertisement for four consecutive weeks in the *Greenbrier Independent*, published in that county. But before receiving any money under this decree, said commissioners should execute and file with the clerk of that court, bond with good security to be approved by him, in the penalty of $10,000.00, conditioned according to law. And they should report their proceedings to that court at its next term ;" and overrules the exception of Susan Hoke to the report of commissioner Withrow in relation to charging her in her account as a legatee of the testator with $196.50 and interest thereon for property bought at the executor's sale of the testator's, C. Hoke's personal property, be and the same are hereby reversed, set aside and annulled ; and that the appellees, John M. Hoke, Eli Rogers and Henry Hoke, husband of Susan Hoke, daughter of Christopher Hoke, deceased, do pay to the appellant his costs about the prosecution of his appeal in this court expended.

And it is further adjudged, ordered and decreed, that so much of said last named decrees, and of each of them, as is not hereinbefore reversed, set aside and annulled, be, and the same is hereby affirmed so far only

1878.
Special Term.
————
Hoke, ex'or, &c.
v.
Hoke *et al.*

as the same applies to this case and is not inconsistent with said written opinion; but the said affirmance is hereby expressly made subject to this further qualification and modification, viz: that commissioner James Withrow to whom his reports are recommitted by said decree of the 21st of November, 1874, shall in executing the order of recommittal of said reports in said last named decree contained so far as the same applies to this case, in re-stating the accounts in said last named decree contained and re-stating the accounts in said last named decree directed to be re-stated so far as said accounts relate to this case, re-state said accounts according to the principles and modifications set forth in said last named decree, except when or where such principles and modifications are inconsistent and conflicting with the principles settled in and by the foregoing opinion of this Court, and to the extent of such inconsistency or conflict, said commssioner shall re-state said accounts according to the principles and modifications of said reports set forth, or stated in said written opinion of this court, and it is accordingly so adjudged, ordered and decreed. And further the said affirmance does not and shall not apply to or embrace so much of the said decree of the 26th day of November, 1873, as dismisses the bill in the cause of Henry Hoke and Virginia S. his wife, et. al vs. Christopher Hoke, et al. defendants, with costs to the defendant, Christopher Hoke, and does not and shall not apply to so much of the said decree of the 21st day of November, 1874, as applies to the case of John Dunsmore's administrator et al. plaintiffs vs. C. Hoke, et al. defendants, and designated or referred to in said last named decree, as the "second of these causes" or "second cause," as is not hereinbefore reversed set aside or annulled, this court being of opinion that the appeal allowed in this case, does not properly apply to or cover the last mentioned parts of said last named decrees, and it is accordingly so adjudged, ordered and decreed.

It is further adjudged, ordered and decreed, that the

decrees and orders made in this cause, after the 14th day 1878.
Special Term.
Hoke, ex'or, &c.
v.
Hoke et al. of October, 1872, and prior to the 26th day of November, 1873, from which the appeal in this cause was allowed he and they are hereby affirmed. And this court proceeding to render such decree in this cause, as the said circuit court of Greenbrier county ought to have rendered, it is adjudged, ordered and decreed that this cause be remanded to the said circuit court of the county of Greenbrier, with instruction and direction that such other and further proceedings be had therein and there, as are in accordance with the principles settled in said written opinion of this court, and further according to the principles, rules and practice governing courts of equity.

CAUSE REMANDED.